[No. 28799. Department One. November 10, 1942.]

NATIONAL BANK OF WASHINGTON, COFFMAN-DOBSON BRANCH, as *Guardian, Respondent,* v. HAZEL MCCRILLIS, *Appellant.*[1]

[1]Reported in 130 P. (2d) 901.

*E. W. Leonard* and *James A. Stinson,* for appellant.
*Don G. Abel,* for respondent.

JEFFERS, J.—This action was instituted January 15, 1940, in the superior court for Lewis county, by the National Bank of Washington, Coffman-Dobson Branch, as the guardian of Dorcy T. Coleman, an insane person, against Hazel McCrillis, to annul a marriage entered into on November 1, 1932, between Dorcy T. Coleman and defendant. The basis of the complaint is that Dorcy T. Coleman was insane at the time of the purported marriage, and has been at all times since.

It appears from the complaint that the parties above mentioned lived together as man and wife until shortly before this action was started. No children were born as the issue of this marriage.

The summons and complaint in the action were personally served on Hazel McCrillis, in Lewis county, on January 26, 1940. On April 1, 1940, plaintiff bank, by its attorney, Don G. Abel, filed a motion and affi-

davit for default against defendant. The default was claimed, as appears from the affidavit, on the ground that personal service of the summons and complaint had been made upon defendant in Lewis county, and that she had not served or filed any appearance in the action. On the same day the motion and affidavit were filed, Herbert H. Sieler, purporting to act as judge *pro tempore,* signed an order adjudging defendant to be in default.

The following is a minute entry made in the court's journal April 1, 1940, in this cause:

"Cause came on regularly in open court for trial, the plaintiff being represented by Don G. Abel; *Defendant not present or represented.* Three witnesses called and sworn. C. R. Mitchell called, examined by Mr. Abel, excused. The court then being duly advised in the premises, granted the plaintiff a decree of annulment of marriage. (Signed) HERBERT H. SIELER (Italics ours.) Judge Pro Tem."

It will be noticed from the above record that it appears affirmatively that defendant was not present or represented at the hearing, and it does not appear affirmatively that the prosecuting attorney was present. No findings of fact, conclusions of law, or judgment were made or filed on April 1, 1940, nor prior to the death of Mr. Coleman, on December 6, 1941.

On April 1, 1940, at the time Mr. Sieler purported to act as judge *pro tem.,* there was of record no order of a judge of the superior court appointing Mr. Sieler as such judge *pro tem.,* nor was there of record any agreement of the parties consenting to such appointment. Nor had Mr. Sieler, at the time he purported to act, taken the oath required by the statute.

On April 10, 1940, nine days after the hearing, an order appointing Herbert H. Sieler as judge *pro tem.* was filed. We desire to call attention to the last line

of this order, which states: "Done in open court *and dated as of April 1, 1940.* (Signed) C. A. Studebaker, Judge." (Italics ours.) It does not appear from the record just when this order was actually signed by Judge Studebaker, but both plaintiff and defendant have treated it as a *nunc pro tunc* order.

While the above order contains the following statement: "*On agreement of the parties* and it appearing to the court that Mr. H. H. Sieler, attorney of Chehalis, Washington, is admitted to practice law in the state of Washington, . . . ." (Italics ours) it is not contended that defendant ever signed any agreement consenting to Mr. Sieler's appointment, or that she ever agreed orally in open court to such appointment, but it appears that any agreement consenting to such appointment which may have been made was made by plaintiff and the prosecuting attorney.

It will be remembered that Mr. Coleman died on December 6, 1941. On December 20, 1941, defendant filed a notice of appearance in the action. On the same day, defendant filed a motion to set aside default and to dismiss. This motion was based upon the record and an attached affidavit. This affidavit states in part that affiant and Dorcy T. Coleman were legally married in Chehalis, on November 1, 1932, and that the marriage continued until about December 6, 1941, the date of her husband's death; that the parties lived together until on or about August 22, 1939, when she was forced to leave home through fear of personal violence threatened to be inflicted upon her by her husband; that, at the time of the marriage, affiant did not know her husband had been adjudicated insane, and she then believed, and still believes, her husband was competent to and did contract a valid marriage with her; that affiant has not heretofore appeared in this action be-

cause she was afraid that her husband would inflict grievous bodily harm upon her.

On December 29, 1941, defendant filed an instrument entitled "Objection to Further Proceedings in this Case." In this document, defendant challenged the jurisdiction of the court to take further proceedings in the action, other than a dismissal thereof, for the reason that, plaintiff's ward having died, the guardian has no power to proceed.

Defendant, also, on December 29, 1941, filed a motion to vacate order of default and for dismissal. The grounds for this motion are in substance as follows:

(1). That the plaintiff is the successor to Coffman-Dobson Bank & Trust Co., and that such bank was appointed guardian of the estate of Dorcy T. Coleman, and as such has no power to prosecute this action;

(2). That Mr. Coleman died December 6, 1941, and the power of plaintiff as such guardian has now terminated, except as to settlement of accounts;

(3). That the subject matter of the action has ceased to exist;

(4). That the order of default is signed by one Herbert H. Sieler, purporting to act as judge *pro tem.*, and that no valid order for his appointment is of record, in that (a) no agreement in writing for his appointment is of record in the case, and no consent thereto is of record in the case, made by either party to the action, and no consent thereto, either orally or otherwise, has been made by defendant, and (b) no oath as judge *pro tem.* has been filed or made by Herbert H. Sieler in the case;

(5). That there is another action pending in the superior court for Lewis county, to which the parties here are the parties;

(6). That the defendant has a full and complete defense to the action on the merits, in that Dorcy T.

Coleman was not insane at the time of the marriage, and well knew and understood the nature of the contract into which he then entered;

(7). That, ever since the marriage and down to about August 22, 1939, the parties cohabited and lived together as husband and wife, and were so living at the time of the commencement of this action, all of which was well known to plaintiff guardian;

(8). That defendant feared to appear in the cause prior to the death of Dorcy T. Coleman, because of threats made by him to defendant as to possible physical injury to her should she do so.

The above motions were noted for hearing before the court on January 19, 1942, and on that date, as appears from a minute entry in the court journal, the cause came on for argument on motion to vacate the order of default, whereupon Judge Studebaker "denied the motion by reason of the court's refusal to hear matter previously assigned to Judge Pro Tem Sieler."

On January 19, 1942, a petition to intervene by the brothers and sisters of Mr. Coleman was filed and noted for hearing. After the petition was filed, and when the matter came on to be heard, defendant objected to jurisdiction of the court to hear the matter, and after argument the hearing was continued to January 29, 1942, at which time the matter came on for hearing, as appears from the court journal, on special appearance of defendant objecting to the court's jurisdiction, all parties, including interveners, being represented. After argument, Mr. Sieler ruled "that the court had jurisdiction to hear the case and now has jurisdiction." The matter of intervention and of taking oath as judge *pro tem.* was taken under advisement, and a hearing was set for February 9, 1942, for consideration of intervention and entering a *nunc pro tunc* decree. On

the last mentioned date, the matter was further continued to February 16, 1942.

The following appears from the court journal of February 16, 1942, in this cause:

"Cause came on for hearing re. matter of intervention by J. W. Coleman, et al, and for entry of nunc pro tunc decree, the plaintiff being represented by Don G. Abel, and Jas. A. Stinson and E. W. Leonard appearing specially for the defendant; Grant Armstrong present on behalf of the intervenors.

"Statement was made by Mr. Leonard, who asked the defendant's special appearance be preserved and objected to the jurisdiction of the court and objected to the entry of a nunc pro tunc decree.

"C. R. Mitchell called, sworn, examined by Mr. Abel, exc. The court then stated it would enter a nunc pro tunc decree if the original decree could not be found. Defendant's motion to set aside default, etc., was denied by the court. Defendant's objections to further proceedings was overruled by the court. Motion to vacate default was denied. Motion to intervene to be decided later by the court. The objections to jurisdiction filed on January 19, 1942, by Mr. Leonard and Mr. Stinson, was overruled.

"Hearing then continued until 2:30 p. m., this day.

"At 2:30 p. m., the matter was again taken up, shorthand notes at this time taken by Kathryn Sturdivant, deputy clerk.

"Plff's Ex. 1 admitted, same being a copy of a letter addressed by C. R. Mitchell to Don G. Abel under date of April 19, 1940, concerning which letter Mr. Mitchell testified at this morning's session.

"Plff's Ex. 2 admitted, same being a letter addressed by Don G. Abel to Mr. R. L. Ponder, Pros. Atty., under date of April 3, 1940, to which is attached original findings of fact and conclusions of law and judgment in which Mr. Ponder accepted service and approved the form.

"The court then denied the right to intervene and entered findings of fact and judgment in the case.

"(Signed)  Herbert H. Sieler
Judge Pro Tem."

From the findings and conclusions filed February 16, 1942, the following appears: "Done in open court this 16th day of Feb. 1942, and dated as of April 6, 1940. (Signed) Herbert H. Sieler, Judge Pro Tempore."

The judgment, entered February 16, 1942, reads in part as follows:

"Now therefore it is hereby ordered, adjudged and decreed that the attempted marriage between Dorcy T. Coleman and Hazel McCrillis, on or about November 1, 1932, be and the same is hereby annulled and set aside.

"Done in open court this 16th day of Feb., 1942, *and dated as of April 6th, 1940.*

"(Signed)   HERBERT H. SIELER
(Italics ours.)                         Judge Pro Tempore."

May we briefly summarize the important steps taken in this matter:   April 1, 1940, Mr. Sieler assumed jurisdiction of the annulment proceedings.   April 10, 1940, Judge Studebaker, the regularly elected judge of the superior court for Lewis county, filed an order appointing Mr. Sieler judge *pro tem.,* the order stating there was an agreement of the parties to Mr. Sieler's appointment, the order *being dated as of April 1st.* February 16, 1942, after the death of Mr. Coleman, a *nunc pro tunc* judgment was entered by Mr. Sieler, dated as of April 6, 1940.   Finally, the oath of office was executed and *dated as of April 1,* 1940.

There are a few additional facts found by the judge *pro tem.,* which should be noted.   He found that, during the month of April, 1940, findings of fact, conclusions of law, and a proposed judgment, all of which had been approved as to form by the prosecuting attorney of Lewis county, were delivered to his office; that the employee in Mr. Sieler's office with whom these papers were apparently left failed to call to the attention of Mr. Sieler the fact that they had been left for his signature; that, if they had been presented to

him, he would have signed them; and that, through a misunderstanding, Mr. Sieler mistakenly advised the assistant trust officer of the guardian bank that he had signed the papers.

As we have stated, there is no contention made that defendant ever agreed, either orally or in writing, to the appointment of Mr. Sieler as judge *pro tempore.*

Defendant has appealed from the judgment entered on February 16, 1942, and dated as of April 6, 1940, making the following assignments of error:

"1. The court erred in entry of a *nunc pro tunc* order of appointment of judge *pro tempore* in the case, without appellant's consent.

"2. The court erred in refusing to entertain appellant's motion to vacate order of default against appellant, and to dismiss the case.

"3. The alleged judge *pro tempore* erred in overruling appellant's objection to his jurisdiction to proceed further in the hearing of the case.

"4. The alleged judge *pro tempore* erred in entering a *nunc pro tunc* findings and conclusions and decree in the action.

"5. The alleged judge *pro tempore* erred in entering a decree annulling the marriage,—in that the complaint failed to state a cause of action."

We think the primary question presented here is one of jurisdiction, and goes to the authority of Mr. Sieler to act as judge *pro tem.* in this case; for, if it be determined that Mr. Sieler never had or acquired jurisdiction to proceed in this cause, it will become unnecessary to discuss the other points raised.

■ Art. IV, § 7, of our constitution, makes the following provision relative to the appointment of a judge *pro tempore:*

" . . . A case in the superior court may be tried by a judge pro tempore, who must be a member of the bar, agreed upon in writing by the parties litigant

or their attorneys of record, approved by the court, and sworn to try the case."

Rem. Rev. Stat., § 40 [P. C. § 8633], contains the above provision, with the additional statement:

". . . and his action in the trial of such cause shall have the same effect as if he were a judge of such court. A judge pro tempore shall, before entering upon his duties in any cause, take and subscribe the following oath or affirmation: [Then follows form of oath or affirmation]."

It is apparent from the above constitutional and statutory provisions that there are four conditions to the appointment of a judge *pro tempore,* which are: (1) He must be a member of the bar; (2) the appointment must be agreed upon in writing by the parties litigant or their attorneys; (3) the appointment must be approved by the court; (4) the appointee must, before entering upon his duties, take the oath provided by the statute.

It appears from this record that there was a failure to comply with all of the above requirements on April 1, 1940. It does not appear that there was at that time an agreement by any of the parties to the appointment of Mr. Sieler, and there never was any consent to such appointment given by appellant. The order of appointment was not entered until April 10th, dated as of the day of the hearing. The oath of office was not executed until almost two years after the hearing, and it too was referred back to the date of the hearing.

We are confronted, then, with the question of whether or not the acts of Mr. Sieler were valid or null and void, in view of the failure to comply with the constitutional and statutory requirements, and whether or not appellant may, in this proceeding, raise the question of jurisdiction.

Respondent in its brief seems to concede that all of

the above requirements were not complied with, for, in almost the first paragraph of its argument, we find this statement:

. "The whole question under this heading is involved in the question of whether or not the Hon. H. H. Sieler was, in the trial of this case, a judge *de facto.*"

More will be said later in regard to this contention of respondent.

It may be stated at the outset that the strict requirements of the statute have been modified to some extent by judicial construction.

In the case of *State ex rel. Cougill v. Sachs,* 3 Wash. 691, 29 Pac. 446, the attorneys for the parties agreed to try the case before a judge *pro tem.,* and agreed upon one E. C. Johnson. The agreement, which was apparently not in writing, was then approved by the judge, such approval being entered upon the journal. The judge *pro tem.* took the oath provided by statute, and thereafter the cause was tried before him. Both parties were present and made no objection to the judge *pro tem.* Judgment was rendered in favor of plaintiff, and thereafter defendant moved to vacate the judgment rendered, on the ground that the judge *pro tem.* was not qualified to act, because the parties had not signed an agreement in writing for his appointment. This court stated:

"But whatever the facts were as to said agreement having been in writing, the defendant was precluded from making such an attack. He was estopped by his action in appearing and trying the cause before the judge *pro tempore,* without objection, and could not be heard to raise the question thereafter. The fact, if it is a fact, that the agreement was not in writing would not render the appointment void under the circumstances, and a party must seasonably object thereto to take any advantage thereof."

We further stated, however, in the cited case, that,

unless the agreement is made or consent given in open court, it must be by written stipulation. The further statement is made that the consent in the cited case was given in open court, and it appears that all other requirements of the statute were complied with.

It is apparent from the above decision that this court recognized that there must be a consent by the parties litigant to the appointment of a judge *pro tem.*, either orally in open court or by written stipulation.

While the opinion in the case of *First Nat. Bank v. Parker*, 28 Wash. 234, 68 Pac. 756, 92 Am. St. 828, does not give us any facts relative to the appointment of the judge *pro tem.* who tried the case, apparently on appeal objection was made that the judge was not sworn, for we stated therein:

"The objection that the judge *pro tem.* was not sworn is not available here, because not raised in the record by seasonable objection."

It may be conceded that the failure of a judge *pro tem.* to take the oath of office will not render his acts void, at least where the parties appear and do not make seasonable objection.

We are concerned in the instant case, then, with the failure of appellant to assent to the appointment of the judge *pro tem.*, and the effect of the *nunc pro tunc* order of appointment.

As we have said, respondent contends that Mr. Sieler, in any event, became a *de facto* judge, and as such had jurisdiction to hear the case. Respondent further contends that appellant, by allowing the default to be taken against her, and by making a general appearance in the case, waived her right to question the regularity of the appointment.

While we recognize the importance of the general rule which prohibits a litigant from questioning the judge's title to his office, we are of the opinion that rule

should not be applied here. The general rule that where a person is exercising the judicial *office* under color of right, his title cannot be questioned in a proceeding before him, does not preclude a party to a suit from challenging the authority of a special or substitute judge to try the case, for the very good reason that, properly speaking, such a judge *does not assume to have any title to the office.* 30 Am. Jur. 811, § 108.

A judge *pro tem.*, under our statute, is appointed to hear one particular case. He does not derive his authority from a general election, nor from an appointment by an executive officer, but his power to act is based upon the consent of the parties litigant to his appointment. A judge *pro tem.*, under our statute, is not a superior court judge, and could make no claim to the office of superior court judge. We are of the opinion that it clearly appears from the constitutional and statutory provisions that *the* essential element to the valid appointment of a judge *pro tem.* which must exist is the consent of the parties. *State ex rel. Cougill v. Sachs, supra.*

While it is not claimed that appellant ever assented to Mr. Sieler's appointment, it is contended by respondent that consent was given by the prosecuting attorney, and that was sufficient compliance with the statute, and it was not necessary, nor would it be practical, to require the assent of the defaulting party.

We have given considerable thought to the meaning of the term "parties litigant," as used in the constitutional and statutory provisions, and we have concluded that the term means the antagonistic sides of a controversy. See 47 C. J. 246; *Cumberland Tel. & Tel. Co. v. Ware's Administratrix,* 115 Ky. 581, 74 S. W. 289. In other words, it means the real parties in interest.

In an annulment proceeding, the persons directly concerned are the parties to the marriage contract, and they are the antagonistic parties by whom consent must be given before a judge *pro tem.* can hear such proceeding. The state, represented by the prosecuting attorney, cannot be said to be antagonistic to either party. His appearance in divorce and annulment proceedings is to protect the interest of the state in the marriage contract, and to prevent fraud and collusion on the part of litigants. Whatever the exact status of the prosecuting attorney may be in an annulment proceeding, we are satisfied that consent given by him does not meet the constitutional and statutory requirements that consent must be given by the parties litigant.

It is contended that, unless the prosecuting attorney may consent to the selection of a judge *pro tem.*, it would be impossible to obtain a special judge, the defendant having defaulted. It does not appeal to us that, under our practice, this would be any particular hardship. If for any reason the resident judge is disqualified, and it is impossible to select a judge *pro tem.*, it is always possible to call in a visiting judge.

Because of our practice which causes no particular hardship by denial of the right to select a judge *pro tem.*, and because we feel that the words "parties litigant" mean the truly adverse parties, we feel justified in placing upon these words the interpretation which we have.

■ While respondent apparently concedes that Mr. Sieler's appointment was irregular, nevertheless it contends that appellant has waived her right to object to such irregularity, and that the entire proceeding is valid because Mr. Sieler was a *de facto* judge *pro tem.*

As the basis of Mr. Sieler's appointment is the consent of the parties, if there has been no consent, either in writing or orally in open court, he is without jurisdiction to hear the case, and the entire proceedings before him are void.

A constitutional provision of California similar to our own was given the above construction in *Toby v. Superior Court,* 8 Cal. App. (2d) 32, 47 P. (2d) 338. It may be contended that the *Toby* case has been modified by *In re Kent's Estate,* 50 P. (2d) (Cal. App.) 457, and *In re Kent's Estate,* 6 Cal. (2d) 154, 57 P. (2d) 901, but a reading of the last cited cases indicates they do nothing more than limit the application of the *Toby* case to the facts therein stated. We quote from the last *Kent* case:

"The decision in the Toby case, limited in its application to the rights vested in distributees named in a duly entered decree of distribution, is not necessarily in conflict with the principles recognized in our decision in the instant case."

The rule is stated in the case of *Clements v. Fort Worth & D. S. P. R. Co.,* 7 S. W. (2d) (Tex.) 895, as follows:

"The rule is that a judgment rendered by a special judge who had not been appointed or selected in accordance with the constitutional and statutory requirements governing such matters is an absolute nullity, and that before a special judge can be appointed or selected, the conditions pointed out by the constitution and the statute must exist before such selection or appointment of the special judge is valid."

In the Missouri case of *Ex parte Fish,* 184 S. W. 479, the court stated:

"One can become invested with jurisdiction to exercise the powers of a special judge only in the manner prescribed by law."

Our constitution and statute having made an agreement by the parties the method of selecting a special judge, it is a jurisdictional requirement which must be satisfied before a judge *pro tem.* has authority to hear a case. Since it is a jurisdictional requirement, it may be raised at any time, and was not waived by appellant herein.

We are also of the opinion the acts of Mr. Sieler were not valid upon the theory that he was a *de facto* judge *pro tem.* His acts being entirely void because of the failure of the parties litigant to consent to his appointment, we are of the opinion there is no theory upon which he may be considered a *de facto* officer.

Respondent has cited many authorities containing definitions of a judge *de facto.* While there are exceptions, we think it evident that in the greater number of these definitions there was an *office* to which the judge was claiming some title. We take the following quotation from respondent's brief, which is apparently taken from Van Fleet's Collateral Attack, § 38:

" 'Judge de facto—What constitutes.— . . .

" 'The definition of an officer *de facto* given by Lord Raymond was that "he is one who has the *reputation* of being the officer he assumes to be, and yet is not a good officer in point of law." A judge appointed by the governor without lawful authority to do so; a justice of the peace elected under a void statute, or by the voters of a village and town when he was only a village officer; . . .' " (Italics ours.)

We take another citation from respondent's brief:

" 'A *de facto* officer is one who is in *possession of an office* and discharging its duties under color of authority; McCrary on Elections, 3d ed., sec. 218; 2 Dillon on Municipal Corporations, sec. 892. By color of authority is meant authority derived from an election or appointment, however, irregular or informal, so that the incumbent be not a mere volunteer. . . .' *State v. Oates,* 39 Am. St. Rep. (Wis.) 912." (Italics ours.)

We take also from respondent's brief the following quotation from *Walcott v. Wells,* 21 Nev. 47, 24 Pac. 367, 37 Am. St. 478, 9 L. R. A. 59:

"In *State ex rel Corey v. Curtis,* 9 Nev. 338, we had occasion to examine and discuss, to a limited extent, · the question as to what constitutes an officer *de facto.* The rules taken from the authorities were there announced as follows: (1) One who has the *reputation of being the officer he assumes to be,* and yet is not a good officer in point of law. (2) One who actually performs the duties of an office, with apparent right, and under claim and color of an appointment or election. (3) *One who has the color of right or title to the office he exercises.* (4) *One who has the apparent title of an officer de jure.*" (Italics ours.)

The reason for the *de facto* doctrine is well stated in 9 So. Cal. L. Rev. 218:

"The reasons typically advanced by the many cases already cited elsewhere in this article state that the de facto doctrine is based upon principles of public policy, convenience, necessity and justice; or, in other words, that the public interest requires it as necessary to the maintenance of the supremacy and execution of the laws and for the protection and security of individual rights of person and property, it being unjust and unreasonable to require every individual doing business with an officer to investigate and determine at his peril the title of such office."

We are in full accord with the reasons for the rule as above stated, and where the rule is properly applied it is undoubtedly a salutary one, but we do not think the rule applicable in the instant case. The position of a judge *pro tem.* is entirely different from that of one claiming to be a superior court judge by election or appointment. The temporary character of the authority of a judge *pro tem.* and the fact that only the parties litigant are concerned with his right to act, in our opinion destroy the basis for the normal rules

concerning *de facto* judges. The parties, when they appear before a special judge, are not appearing before one who has had the general reputation in the community of being a judge, for the reason that the only case he may try is the one then before him. Nor are they appearing before one who has been elected or appointed in some manner, the legality of which the parties could not be expected to know. A judge *pro tem.* does not and could not make claim to the office of superior court judge. Therefore, there is no undue burden placed upon the parties to an action when they are required to determine whether or not there has been actual consent given to the selection of an attorney as a judge *pro tem.*

As illustrating the distinction we have attempted to make between a judge *pro tem.* under our statute and one who is claiming title to the *office* of judge, we quote from the early Georgia case of *Bedingfield v. First Nat. Bank*, 4 Ga. App. 197, 61 S. E. 30:

"Without going to the pains of citing the numerous authorities we have examined, we hold unhesitatingly that Mr. Kinman, as judge pro hac vice [for this particular occasion], can not be considered as a de facto officer. If he had been properly appointed he would not have been judge of the county court, but merely a person procured under the provisions of the statute for a special purpose to meet the emergency arising from the disqualification of the judge, and in order to preserve the court for the trial of a special case. There can be no de facto judge pro hac vice. One chosen for that purpose must be either judge pro hac vice de jure, or he has no rights, powers, or authority whatsoever."

We do not, however, desire to be understood as holding that there may never be a *de facto* judge *pro tem.*, but we hold in the instant case that Mr. Sieler was not a *de facto* judge *pro tem.*

We recognize that there are jurisdictions which have

adopted the rule contended for by respondent, but we do not feel that rule should be applied to this case.

We conclude, therefore, that all of the acts of Mr. Sieler purporting to act as judge *pro tem.* are null and void.

All of the acts of Mr. Sieler, beginning with the order of default entered by him on April 1, 1940, and concluding with the judgment entered on February 16, 1942, being absolutely void for lack of jurisdiction, we then have this situation presented: A complaint filed by the guardian of Mr. Coleman on January 15, 1940, to annul the marriage between Mr. Coleman and appellant; personal service of the summons and complaint upon appellant in Lewis county; a motion to dismiss the action, supported by the affidavit of appellant, filed December 20, 1941, in which affidavit it is alleged, among other things, that appellant and Mr. Coleman were married on November 1, 1932, and continued as man and wife up to the date of the death of Mr. Coleman, which occurred on December 6, 1941.

The superior court, then, had jurisdiction of the subject matter and the parties, but although it does not appear that Judge Studebaker had been disqualified in this case, on January 19, 1942, at the time the matter came before him on the motion to dismiss, he refused to consider the motion for the reason, as stated by him, that the cause had been assigned to Mr. Sieler, as judge *pro tem.*

It is apparent that the motion to dismiss presents factual as well as legal questions, neither of which have been passed upon or determined by the lower court, and, in our opinion, these questions should be passed upon by that court.

The judgment appealed from is reversed and the cause is remanded to the superior court, with instructions to hear and pass upon appellant's motion and

affidavit to dismiss this action, and at such hearing the court may consider any additional affidavits it may permit to be filed, and it may, in its discretion, permit oral testimony to be introduced.

ROBINSON, C. J., MILLARD, STEINERT, and SIMPSON, JJ., concur.