SHIPPERS' BEST EXPRESS, INC., a
Utah Corporation, Plaintiff
and Appellant,

v.

Wayne NEWSOM, Defendant
and Respondent.

No. 14906.

Supreme Court of Utah.

Jan. 25, 1978.

On Rehearing May 3, 1978.

Daniel E. England of Nelson, Harding, Richards, Leonard & Tate, Salt Lake City, for plaintiff and appellant.

Horace J. Knowlton, Salt Lake City, for defendant and respondent.

PER CURIAM:

This is an appeal from a judgment and verdict in favor of Newsom for $6,800 *on his counterclaim for malicious prosecution* in a suit by Shippers' against him (an independent truck driver) *based on breach of a lease of one of Shippers' trailers.* Shippers' was awarded $3,552 for the breach, as against Newsom's counterclaim judgment.

Newsom made a number of hauls under the lease, which called for 67 percent of the gross revenues. The controversy between the two revolved around variations of the terms depending on kind of freight hauled, whether the cargo was dairy or meat products, dead-heading, layovers, and the like. Newsom claimed he was losing money and told Shippers' he would have to quit, but demanded an accounting before he returned Shippers' trailer, a matter before the jury for deliberation. This was followed by Shippers' trying to locate the trailer. After an impasse, Shippers' gave the police details of the contract arrangements and its inability to locate the trailer, and it appears that the police had considerable difficulty locating either Newsom or the trailer. All this occurred before Shippers' filed any civil action. When Officer Westley finally contacted Newsom by phone, the latter told him that it was a civil matter and refused to say where the trailer was. Further attempts to locate the trailer by police and highway patrol proved unsuccessful. Westley, after a heated telephone conversation with Newsom, went to the county attorney's office with the information. The latter issued a complaint and *Newsom was*

*arrested.* At a conference at arraignment between him and Shippers' and the attorneys, a dismissal was agreed upon if Newsom told where the trailer was. He returned it to Shippers' yard that night, where Shipper inspected it, claiming some things were missing. Newsom removed the trailer, and Shippers' sued in replevin. Newsom claimed no default in the lease, and that when he called Shippers' about it, he was told that he stole the trailer, to forget it, was otherwise abused, and that his arrest was punitive. The jury apparently agreed,—involving the important factor of intention in a malicious prosecution suit.

■ Shippers' urged there 1) was no valid claim, 2) no malice or absence of probable cause, 3) the criminal action did not result in Newsom's favor, and 4) parol evidence erroneously admitted. Shippers' point to 52 Am.Jur.2d, Sec. 45 (Malicious Prosecution) citing *Kennedy v. Burbidge*, 54 Utah 497, 183 P. 325, in support as saying the action requires three factors: 1) no probable cause, 2) malice, and 3) dispositive action favorable to the accuser. The principles are sound but not applicable here if the jury reasonably finds so. Shippers' say they gave all the facts to the police and that therefore it is a police,—not a civil matter. Liability cannot so succinctly be transferred from the civil to the criminal calendar,— and we are not in agreement with Shippers' urgence that the generalization of Restatement of Torts, 653(g), is of consequence here nor that *Potter v. U. Driv-Ur-Self*, 11 Utah 2d 133, 355 P.2d 714, controls under the different facts of the instant case. Nor does the "agreement to dismiss" at arraignment solve the "finality" of the case in preventing a compensable claim but rather bolsters the claim, with the cited authority (52 Am.Jur.2d, Mal.Pros. 32, 3, 6, 7) not being apropos here. Judgment affirmed.

MAUGHAN and WILKINS, JJ., concur in result.

HALL, J., having disqualified himself, did not participate herein; HENRIOD, Retired J., sat.

## ON REHEARING

ELLETT, Chief Justice:

The appellant requests a rehearing of this matter which was decided January 25, 1978, based solely upon the ground that Mr. Justice Henriod, a retired member of this Court, participated therein. There is no merit to the contention made by appellant.

Article VIII, section 2 of the Utah Constitution provides:

The Supreme Court shall consist of five judges, *which number may be increased or decreased by the legislature,* . . . If a justice of the Supreme Court shall be disqualified from sitting in a cause before said court, the remaining judges shall call a district judge to sit with them on the hearing of such cause. . . . [Emphasis added.]

Pursuant to the provision of the quoted section, the legislature did increase the number of justices who may sit on causes before the Court. U.C.A., 1953, 49–7–5.7 provided:

Any judge who has retired under the provisions of this act and is physically and mentally able to perform the duties of the office shall be entitled after retirement to serve from case to case as a justice of the supreme court upon invitation of the chief justice, . . .

That section was later amended by Chapter 222, Laws of Utah, 1967, codified as U.C.A., 1953, 49–7–5.7 to read:

Any judge who has retired under the provisions of this act and is physically and mentally able to perform the duties of the office and who is not engaged in the practice of law shall be entitled after retirement to serve from case to case as a justice of the Supreme Court upon invitation of the chief justice, . . .

■ Mr. Justice Henriod is mentally and physically able to sit and is not engaged in the practice of law. He, therefore, is qualified to sit on the case. Pursuant to the statute, Justice Henriod was invited to sit on this case. His vote in the matter was not needed as the decision was a per curiam

opinion with two of the five justices concurring in the result. Not only was his vote immaterial, but the appellant is not in a position to complain about it for he did not object when the appeal was heard and decided by the Court as then constituted. He only complains about the membership of the Court after the decision was rendered partially against him. In this petition he makes no complaint about the decision itself.

This identical situation was before this Court in the case of *People v. Tidwell et al.*[1] In that case Judge Powers sat with other members of the Supreme Court although he was not a member thereof. This Court said:

> The third ground urged is that Judge Powers, who sat in the hearing of the case in this court, was not, at the time, a member of this court. The question as to whether Judge Powers was a legal member of this court is one that the court would not examine into upon a motion for a rehearing, where no facts are shown to warrant it, and where one side only is heard. He was a *de facto* officer most certainly, and the attention of the court was not at the time called to any irregularity in his so doing, nor was any doubt cast upon his authority to act. Besides, Judge Powers did not agree with the majority of the court, but dissented.
>
> We see no good reason for granting the prayer of the petitioner, and the rehearing is denied.

■ The dissent cites U.C.A., 1953, 78–2–3 as authority for hearing a motion for rehearing. That section applies to the pronouncing of a *judgment*. In this case, the judgment has been pronounced. To set it aside requires a vote of a majority of those who heard the matter; otherwise the judgment which was pronounced by a majority of the Court stands.[2] In this case, three justices who voted for the original decision have voted to deny the motion for a rehearing and that constitutes the required majority.[3]

For the reasons above set out, the petition for a rehearing is denied and the decision heretofore given is affirmed. The respondent is awarded costs, if any.

HENRIOD, Retired J., concurs in the result.

CROCKETT, Justice (concurring in denial of petition for rehearing).

It is my opinion that the petition for rehearing should be adjudicated upon its merits as related to the issues in the case; and that is the basis for my vote to deny it. Quite apart therefrom, and in reference to the dissent: it is totally foreign to my conception of fairness and justice for a party to submit his controversy to a court for adjudication, then wait to see whether he wins or loses, and when he loses to then attack the composition of the court. That this may not properly be done, see *People, etc. v. Tidwell et al.,* 5 Utah 88, 12 P. 638; *In re Thompson,* 72 Utah 17, 87, 269 P. 103, 128.

MAUGHAN, Justice (dissenting).

In this matter, one member of the court recused himself and took no part in the proceedings. At this juncture the chief justice called a retired justice to fill the temporary vacancy.

The matter was submitted on the briefs, and neither party appeared for argument. The issues were resolved in favor of defendant.

---

1. 5 Utah 88, 12 P. 638 (1886).

2. 5 C.J.S. Appeal & Error § 1408; 5 Am.Jur.2d, Appeal & Error, § 985.

3. The writer of the dissent, for reasons perhaps known to himself, refers to the case of *Matheson v. Crockett,* Utah, 577 P.2d 948, 1978, in which he did not participate. It is to be observed that even by the tests set forth in the dissent, that case would have no application here. The parties appeared for argument; the Chief Justice announced the disqualification of two Justices, named those selected to sit in their stead, and asked and obtained from the parties through their counsel, the approval of the court as so constituted. No question has been raised by any party to that suit as to the composition of the court.

Upon being apprised of the decision, counsel for plaintiff filed a petition for rehearing. The petition seeks a rehearing before a properly constituted panel of judges. It attacks the court, which decided the matter, as unconstitutional in its composition.

The petition is clearly correct in its claim. The panel of judges was not a court, because its composition was clearly in violation of our Constitution.[1] If any should meticulously follow the law, we are they.

The application for rehearing should be granted. It provides this court with an opportunity to consider, in depth, this serious question of constitutional magnitude.

In interpreting the Constitution of Utah, reference must always be made to the fundamental guide set forth in Article I, Sec. 26:

The provisions of this Constitution are *mandatory* and prohibitory, unless by express woi ds they are declared to be otherwise. [Emphasis supplied.]

Article VIII, Sec. 2, provides:

The Supreme Court *shall* consist of five judges, which number may be increased or decreased by the legislature, but no alteration or increase shall have the effect of removing a judge from office. . . . If a justice of the Supreme Court shall be disqualified from sitting in a cause before said court, the *remaining justices shall* call a *district judge* to sit with them on the hearing of such cause. . . . [Emphasis supplied.]

The only constitutional power granted to the legislature in the above cited provisions was exercised in Sec. 78–2–1, U.C.A., 1953.

The Supreme Court shall consist of five justices, three of whom shall constitute a quorum to hold court or render a decision, but one alone may adjourn from day to day. The term of office of a justice of the Supreme Court shall be ten years and until his successor is elected or appointed or qualified. However, when any justice reaches the mandatory retirement age provided by law, he shall retire and the office held by him shall become vacant.

Section 49–7a–29, U.C.A., 1953, as enacted in 1971 provides:

Any judge whose tenure in Utah has terminated and who has had ten years of judicial service and is physically and mentally able to perform the duties of the office and who is not engaged in the practice of law shall be entitled to serve from case to case as a justice of the Supreme Court upon invitation of the Chief Justice, . . .

According to the circulated opinion this enactment was a legislative increase in the number of justices who may sit on causes before the court. This interpretation is not in harmony with the language of Sec. 2, Art. VIII. The Constitution refers to a constitutional body, the Supreme Court, and states such body shall consist of five members. Power is conferred on the legislature to increase the number of members, who share in the exercise of the judicial power of this State, as permanent members of this body. It is a gross distortion of the express language to interpret this provision as permitting the legislature to substitute, on an ad hoc basis, others than district judges (in specified circumstances), for the permanent members of the court.

Section 2, Art. VIII, further provides, in mandatory terms, the specific procedure when a justice is disqualified from sitting in a cause before the court. The language is compellingly clear—"The remaining justices *shall* call a district judge to sit with them on the hearing of such cause." The repetition of the term "cause" in this sentence, in contrast to the language in the first sentence, further indicates the erroneous nature of the reasoning of the circulated opinion, i. e., the legislature has the power to increase the number of justices to hear individual causes rather than to provide for an increment in the membership of the court.

Since, the procedure for the remaining justices to select a district judge, when one of the justices is disqualified, is found in the Judicial Article of the Constitution, it must

1. *Baumgaertel v. Salt Lake County*, Utah, 560 P.2d 325, 327 (1977).

be deemed an exercise of the judicial power. Any attempt by the legislature to interfere with this judicial function would be a violation of Article V, Sec. 1, wherein the legislature is prohibited from exercising such a function, unless it is expressly permitted or directed by the Constitution.

Under Sec. 2, Art. VIII, the legislature could not, in violation of the mandatory term, designate the chief justice to select a replacement for a disqualified justice. Thus, under two provisions of the Constitution, the legislature could not provide an alternative manner for selecting a replacement, when a justice is disqualified to hear a particular cause.

The fallacious reasoning of the circulated opinion is an extension of that utilized in *Matheson v. Crockett*, Utah, 577 P.2d 948, 1978 (the opinion was not published at the time it was written), wherein the legislative implementation of Article VIII in Title 78 was ignored, viz., see in particular the last sentence of Sec. 78–2–1, U.C.A., 1953. The divided court concentrated exclusively on the provisions of Chapter 7a, Title 30, the legislative purpose of which was to establish a pension plan for judges. The provisions concerning retirement were directed primarily to the regulation of the receipt of pensions. The substance of Sec. 49–7a–29 on which the circulated opinion relies as an exercise of power by the legislature to expand the membership of this court is concerned primarily with the remuneration of judges receiving pensions.

> . . . For his services he shall receive payment at the same per diem rate as unretired judges receive on a per diem basis less retirement allowance, if any, paid during the same period. Any judge so sitting after retirement shall be paid his travel and subsistence expenses as provided by law for judges.

One other aspect merits consideration. In *In re Thompson's Estate*[2] this court interpreted the term "disqualification" in its natural and ordinary sense to include illness, physical disability or any other condition of incapacity; as well as those circumstances set forth in Section 13, Article VIII. Thus, the procedure to substitute for a disqualified justice in Sec. 2, Art. VIII is exclusive; for all instances, in which a justice does not sit on a particular case.

I am compelled to conclude that insofar as any reference to the Supreme Court is concerned, Section 49–7a–29 is a nullity. First, it is not an exercise of the substantive power of the legislature to expand the permanent membership of this court. Second, it would be an unconstitutional exercise by the legislature to attempt to provide a substitute method, for the constitutionally required procedure; for the replacement of a disqualified justice. Third, there was no legislative intention to interfere or to implement the Judicial Article of the Constitution; the purpose was merely to regulate judicial pensions.

The circulated opinion further asserts appellant consented that his appeal be heard and decided by the court as then constituted. This is not so. This appeal was not orally argued but was submitted on the briefs. There is nothing to indicate appellant consented to the submission of his cause to an unconstitutionally constituted panel. Indeed, appellant would have every right to rely on the Constitution, for the proper composition of the court.

This case is clearly distinguishable from *In re Thompson*,[3] wherein the case was argued before the court, and the party and counsel had knowledge a justice was dead and a district judge was sitting in his place. Argument was made without any objection or raising any question as to the district judge sitting and participating in the cause, until after the decision was rendered. This court further found that the district judge was a judge de facto. First, he was qualified to sit in the Supreme Court in some contingencies. Second, he was designated by the Supreme Court to sit, and he sat and participated in the cause in pursuance thereof.

---

**2.** 72 Utah 17, 86, 269 P. 103 (1927).

**3.** Note 1, supra.

In contrast, in the instant case, under the Constitution a retired justice is not qualified to sit in some contingencies, as is a district judge. Secondly, the substitute was selected pursuant to the invitation of the chief justice rather than being called by the remaining justices to sit with them, as provided by the Constitution.

The general rule is that a party cannot attack the title or authority of one acting under color of right as the duly elected or appointed regular judge of the court, in litigation, therein pending.[4] There is an exception, the general rule does not preclude a party to a suit from challenging the authority of a special or substitute judge to try the case, for the reason that such a judge does not assume to have any title to the office.[5]

In *National Bank of Washington v. McCrillis*[6] the court applied the following rule set forth in *Clements v. Fort Worth and D. S. P. Ry. Co.:*[7]

> The rule is that a judgment rendered by a special judge who had not been appointed or selected in accordance with the constitutional and statutory requirements governing such matters is an absolute nullity, and that before a special judge can be appointed or selected, the conditions pointed out by the Constitution and the statute must exist before such selection or appointment of the special judge is valid.

One other matter merits attention. It is clear at this writing the retired justice participates in this matter. When the petition for rehearing was filed he abstained from participation. He now, somehow, rejoins the panel (it cannot be called a court) and votes to deny the petition. It appears clear he did so, because the vote was evenly divided—two to grant, two to deny the petition.

For one to sit in judgment of a cause, which arises because of a constitutional challenge to that one's authority; certainly cannot be countenanced, or justified.[8]

From what has been said, it should be clear the retired justice cannot legally vote, or otherwise participate. His vote being a nullity we are left with a panel of four and the petition, by law, must be granted. I say, by law, because it will be denied only if some members of the panel arrogate to themselves power which is denied them by the Constitution and the statutes.

Let us assume, for the moment, each of the four remaining on the panel is duly qualified to sit. The panel of four votes; two to grant the petition, two to deny.

At the development of this impasse the course this court must take is clear, and not open to doubt.

78–2–3, U.C.A.,1953, is as follows:

> The concurrence of three justices of the Supreme Court is necessary to pronounce a judgment; if three do not concur, *the case must be reheard.* [Emphasis supplied.]

The case must be reheard.

WILKINS, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.

---

4. 144 A.L.R. 1207, Anno.: Right of a party, in course of litigation, to challenge title or authority of judge or of person acting as judge. Section II.

5. *National Bank of Washington v. McCrillis,* 15 Wash.2d 345, 130 P.2d 901, 907, 144 A.L.R. 1197 (1942); 144 A.L.R. 1214, Sec. IIIa.

6. At p. 908 of 130 P.2d, note 4 supra.

7. Tex.Civ.App., 7 S.W.2d 895, 898 (1928).

8. 48 C.J.S. Judges § 78 " . . . It is now a universally recognized principle that a person cannot be a judge of his own cause, and the principle has been so long and well recognized that it is regarded as a maxim of law. . . "