[Nos. 61849-1-I; 62340-1-I;   Division One.   July 20, 2009.]
   62341-9-I.

*In the Matter of the Dependency of* K.N.J.

*Dana M. Lind* (of *Nielsen, Broman & Koch, PLLC*), for appellant.

*Robert M. McKenna, Attorney General,* and *Thomas R. O'Neill* and *Sarah Reyes, Assistants,* for respondent.

¶1 BECKER, J. — Unless the litigants in a superior court case have consented to the appointment of a judge pro tempore, an order entered by that judge is void for lack of jurisdiction. That rule requires us to invalidate the initial order of dependency that preceded the order terminating the parental rights of appellant Michael Jenkins to one of his daughters. We nevertheless affirm the order of termination. The necessary prerequisite finding of dependency was made by constitutionally qualified judges when, after presiding over dependency review hearings, they found that the reason for removing the child "still exists" and ordered that the child remain subject to the control of the State and supervision by the court.

## FACTS

¶2 Michael Jenkins is the biological father of KNJ, a girl born on September 19, 2005. Marquesha Everett is the child's biological mother. KNJ was removed from Everett's custody in February 2006 after relatives took her to a hospital in Oregon. KNJ had fractured bones, was suffering from sores, and was dehydrated and malnourished. She was sent to a critical care facility in Portland.

¶3 The State filed a dependency petition in Snohomish County on February 16, 2006. A shelter care order was issued that same day. The petition alleged that KNJ was dependent according to RCW 13.34.030(5)(b) and (c) based on the hospital's observations and the report of the social worker's investigation. The social worker's report noted that both parents were present for the shelter care hearing in Oregon and were residing together despite a protection order against the father for domestic violence. Both parents were reported to have had significant involvement with Child

Protective Services as children and to have criminal histories involving drugs and domestic violence. The petition stated that the Department of Social and Health Services (DSHS) had no current knowledge about the alleged father's whereabouts or his willingness and ability to parent. A dependency hearing was scheduled for April 18, 2006. The State served Jenkins on February 24, 2006 with notice and summons for dependency proceedings.

¶4 The hearing judge was retired Superior Court Judge Kathryn Trumbull, serving as a judge pro tempore. Everett consented in writing to the appointment of Judge Trumbull and so did the State. Jenkins did not. Jenkins did not appear, request appointment of counsel, or otherwise participate in the hearing. Judge Trumbull signed an order of dependency that was filed on April 19, 2006. Everett, represented by counsel, stipulated to the order. The order was entered by default as to Jenkins. Based on Everett's stipulation, Judge Trumbull found the State's allegations had been admitted. KNJ was a child abused by a person legally responsible for her care, and she was in danger because she had no parent, guardian, or custodian capable of adequately caring for her. The order placed KNJ in the custody of DSHS. Included was a dispositional order pursuant to RCW 13.34.130 requiring the parents to participate in a variety of court-ordered services.

¶5 On February 12, 2007, DSHS filed a petition to terminate the parental rights of Jenkins and Everett. The petition alleged that KNJ was found to be dependent by order filed on April 19, 2006 and this legal status remained in effect; it would be in the best interest of KNJ that all of the parental rights of Everett and Jenkins be terminated. Everett defaulted and her parental rights were terminated in May 2007. Dependency review hearings occurred on July 5, 2007 and November 21, 2007, each time with a regular superior court judge presiding.

¶6 A trial on the petition for termination of Jenkins' parental rights was held in May 2008. Jenkins moved to vacate the dependency order as void due to his lack of

consent to the appointment of Judge Trumbull. The court denied the motion. After hearing evidence that Jenkins had persistent problems with addiction, had never participated in parenting KNJ in any significant way, and had made only minimal efforts to comply with court-ordered services, the court ordered termination of his parental rights. Jenkins appeals.

## THE INITIAL DEPENDENCY ORDER

¶7 It has long been recognized that a court may not concern itself with a child's welfare without first finding that the child is dependent. *In re Welfare of Frank*, 41 Wn.2d 294, 295, 248 P.2d 553 (1952) (father's failure to provide medical treatment for child's speech impediment insufficient to establish dependency; order giving custody to grandmother reversed). This requirement is incorporated into the termination statute. One of the six elements that the State must allege and prove before termination will be ordered is that the child has been found dependent. RCW 13.34.180(1)(a), .190(1)(a). Jenkins contends the order of termination must be reversed because the initial order of dependency, offered by the State to satisfy this element, is void.

¶8 Our constitution requires that the consent of the parties be obtained before a judge pro tempore who is not a sitting elected judge is authorized to try a case in superior court. WASH. CONST. art. IV, § 7. Consent by one party is not enough; consent must be obtained from all parties who are directly concerned. Otherwise, the judge pro tempore lacks jurisdiction in the case and orders entered by that judge are void. A party does not waive the right to consent by defaulting. And the jurisdictional defect is one that can be raised at any time. *Nat'l Bank of Wash. v. McCrillis*, 15 Wn.2d 345, 360, 130 P.2d 901 (1942); *Mitchell v. Kitsap County*, 59 Wn. App. 177, 180, 797 P.2d 516 (1990).

¶9 When an order is void for lack of jurisdiction, ordinarily what the court lacks is either personal or subject

matter jurisdiction. The jurisdictional defect identified in *McCrillis* does not fall into either category. In that case, as here, the superior court had jurisdiction over the subject matter and also had personal jurisdiction over the nonconsenting party by virtue of valid service of the summons and petition. The lack of jurisdiction in a case like *McCrillis* stems from the constitutional provisions for the qualification of superior court judges. A judge pro tempore who is not a sitting elected judge is not authorized to act for the superior court unless the parties agree. An order signed by a person not authorized to act for the superior court is a nullity.

¶10 The State contends that a dependency order is different because it determines the status of the child, and for this purpose it was sufficient that the mother consented to let Judge Trumbull decide. The State relies on *In re Welfare of Fisher*, 31 Wn. App. 550, 552, 643 P.2d 887 (1982). In *Fisher*, a father appealed the order terminating his parental rights, arguing that the initial dependency order was deficient because it did not state that the child was dependent "as to him"; it stated only that the child was dependent. We held it was unnecessary to state explicitly that a child is dependent "as to" a particular parent, guardian, or custodian because that determination is implicit in the finding of dependency.

¶11 *Fisher* does not solve the *McCrillis* problem in this case. An order of dependency affects each parent's relationship with the child separately. A child is not dependent unless the child has *no* parent, guardian, or custodian capable of providing adequate care. Each parent is entitled to mount a separate defense against that allegation; one cannot necessarily speak for the other. To the extent that the judge pro tempore's order purported to find that Jenkins was incapable of caring for KNJ, the order exceeded the scope of any authority conferred by the mother's consent. It was not a valid finding of dependency and cannot satisfy the element of termination set forth in RCW 13.34.180(1)(a).

## THE DEPENDENCY REVIEW ORDERS

¶12 The State next contends that the findings made in the dependency review orders cure the problem with the initial dependency order. The trial court agreed that the review orders independently supply the necessary predicate for the order terminating parental rights.

> Each of the orders found that the child continued to be dependent, which this court finds to be an implicit, or more likely, explicit finding of dependency, a requirement of RCW 13.34.180[(1)](a). See In the Matter of the Welfare of Henderson, 29 [Wn.] App. 748[, 630 P.2d 944 (1981)]. Further, each order continued the out of home placement of the child. RCW 13.34.180[(1)](b) requires that the court has entered a dispositional order pursuant to RCW 13.34.130. That statute addresses the issue of "disposition" in terms of one of two options: (a) a disposition other than removal from the home, or (b) removal from the home. Each of the review orders mentioned above ordered a "disposition", that is, ordered the continued out of home placement.

¶13 By statute, the court must periodically review the status of all dependent children. The purpose of a review hearing is "to review the progress of the parties and determine whether court supervision should continue." RCW 13.34.138(1). In this case, constitutionally qualified superior court judges held dependency review hearings on July 5, 2007 and November 21, 2007. After each hearing, the court entered an order reciting that the child was found to be dependent as to the father on April 18, 2006. The orders were on forms with boxes to check. Each time, the judge checked the boxes indicating that the father had not complied with the court-ordered services; that court supervision should continue; that KNJ continued to reside in foster care; and that the reason for removing her "still exists and it would be contrary to the child's welfare to return home." Boxes indicating that there was no longer any reason to continue out of home placement or court

supervision were left unchecked. The orders show that after each hearing, the court rejected the option of dismissing the dependency and instead determined that KNJ "remains a dependent child pursuant to RCW 13.34.030."

¶14 The trial court's determination that the review hearing orders satisfy the requirement for a previous finding of dependency finds support in *In re Welfare of Henderson*, 29 Wn. App. 748, 630 P.2d 944 (1981) and in *In re A.W.*, 53 Wn. App. 22, 765 P.2d 307 (1989). In *Henderson*, in between the order establishing dependency and the order terminating parental rights, the legislature made a slight change in the statutory definition of "dependency." The mother argued on appeal that this required the court to start over and make a new finding of dependency. The court rejected that interpretation of the statute, in part because there were interim review orders entered after the new statute went into effect. The review orders, the court found, amounted to "an implicit finding of dependency" under the new statute because the court continued its protective custody and wardship of the child. *Henderson*, 29 Wn. App. at 751.

¶15 The father in *A.W.* was initially served by publication and certified mail with notice of the dependency hearing, which was later continued for a month. The father did not appear for the hearing but he did, that same month, begin to participate in services. After establishing his paternity, he was recognized as a party to the dependency and received notice of further proceedings, which included at least two dependency review hearings before his parental rights were terminated. On appeal he raised a due process challenge, arguing for the first time that he was prejudiced by lack of adequate notice of the original hearing and review hearings that occurred before he established paternity. The court held that if there was any flaw in the giving of notice at the beginning of the dependency, it was harmless. The father was not prejudiced by his absence at the initial hearings because he later had the opportunity to provide evidence of his parental fitness at two review hearings where the court nevertheless again found the child dependent.

A dependency is a period during which parents have an opportunity to correct parental deficiencies. Their progress, and the dependent child's status, is judicially reviewed at least once every 6 months to determine whether the dependency should continue. RCW 13.34.130(4). This results in the court effectively making a new finding of dependency at each review hearing. [*State v. *]*Norlund*, 31 Wn. App. [725,] 726[, 644 P.2d 724 (1982)]. Only if it is determined that the efforts to cure parental deficiencies have been unsuccessful and additional services will not remedy those deficiencies in the foreseeable future, will a termination petition be filed.

*A.W.*, 53 Wn. App. at 28.

¶16 Jenkins argues that the judges who entered the dependency review orders did not and could not make up for the defect in the initial order of dependency because they merely referred back to that order instead of making an independent, self-standing evaluation of KNJ's status. He contends that the trial court's analysis is inconsistent with *In re Chubb*, 112 Wn.2d 719, 773 P.2d 851 (1989).

¶17 In *Chubb*, the court had to decide whether an order entered after a dependency review hearing is a disposition from which an appeal may be taken. The court noted that RAP 2.2 made no provision for the appeal of dependency review orders and held that they were not, by their nature, final orders:

> The juvenile court is not required to make the determination of dependency anew at each hearing. Its function is to determine whether court supervision should *continue*. Essentially, if this supervision is to continue, then what the juvenile court has decided is to abide by the status quo: the determination of dependency.
>
> . . . .
>
> . . . This review process continues until either the status quo changes and the court decides that its supervision should not continue or until a petition for termination is made. Because they take place in an ongoing process, the review hearings and the orders issued from them are interlocutory: they are not final, but await possible revision in the next hearing.

*Chubb*, 112 Wn.2d at 724.

¶18 *Chubb* thus holds only that orders entered after dependency review hearings are not appealable. It does not rule out the analysis used by the trial court in the present case: when a court determines in a review hearing that a child remains dependent and court supervision must continue, it is an implicit or explicit finding of dependency that will satisfy the prerequisite for termination of parental rights when the order of dependency is invalid for some reason. The orders entered on July 5, 2007 and November 21, 2007 show that the court on each occasion considered and rejected the option of dismissing the dependency and ending the foster care placement. In this way, the orders unambiguously manifest the court's judgment that Jenkins was not capable of caring for KNJ. That judgment is more than sufficiently supported by undisputed information found in the service and safety plans submitted to the court by DSHS for the review hearings.

¶19 Following *McCrillis*, we conclude the order of dependency filed by the judge pro tempore on April 19, 2006 is not a valid order for purposes of satisfying RCW 13.34.180(1)(a) in the termination trial. Following *Henderson* and *A.W.*, we conclude the defect was cured by the dependency review orders in which constitutionally qualified judges independently found KNJ dependent.[1] The order terminating Jenkins' parental rights to KNJ is affirmed.

Cox and ELLINGTON, JJ., concur.

Review granted at 167 Wn.2d 1013 (2009).

---

[1] The second and third required elements are that the court has entered a dispositional order pursuant to RCW 13.34.130 and that the child has been removed from the custody of the parent for at least six months pursuant to a finding of dependency. RCW 13.34.180(1)(b), (c). The dependency review orders satisfied these elements as well.