[No. 55682–2.   En Banc.   June 1, 1989.]

*In the Matter of* SUNNY CHUBB, ET AL.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES,
*Respondent,* v. EILEEN CHUBB, *Petitioner.*

*Helen H. Wilson,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Terri W. Malolepsy* and *Frederick S. Staatz, Assistants,* for respondent.

*Monroe, Stokes, Eitelbach & Lawrence, P.S.,* by *William W. Hague* and *Elizabeth L. Wallin,* for the children.

UTTER, J.—Eileen Chubb, mother of Vincent and Sunny Chubb, seeks review of three dependency review hearings and of a termination hearing ending her parental rights. She raises several issues before this court, among them whether RAP 2.2(a) allows appeal by right of dependency review hearings. In addition, Ms. Chubb contends that many of her constitutional rights have been violated.

The King County Superior Court, juvenile division, found Vincent and Sunny dependent under RCW 13.34-.030(2)(c) on January 8, 1985. Ms. Chubb appealed this original disposition of dependency to the Court of Appeals. The Court of Appeals affirmed the disposition in *In re Chubb,* 46 Wn. App. 530, 731 P.2d 537 (1987) (*Chubb* I).

Ms. Chubb now challenges not this original disposition but the outcome of subsequent proceedings: three dependency review hearings—which took place on August 13, 1985, April 9–10, 1986, and October 30, 1986—and a termination hearing on May 20–22, 1987.

Ms. Chubb appealed each of these hearings at the Court of Appeals. That court consolidated the appeals and upheld the juvenile court, rejecting all of Ms. Chubb's arguments. *In re Chubb,* 52 Wn. App. 541, 762 P.2d 352 (1988) (*Chubb* II). This court accepted discretionary review. We now affirm the Court of Appeals.

Ms. Chubb has a history of mental illness and is diagnosed as paranoid schizophrenic. As a result of her illness, she expresses paranoid delusions, which often include fears of violent conspiracies involving government agencies. In addition, she leads a rather nomadic life, having moved to several locations in Washington, Idaho, and Oklahoma over the last 4 years. At present, she is living in Oklahoma.

I

Ms. Chubb's first argument is that RAP 2.2(a) affords her appeal by right of a dependency review hearing under RCW 13.34.130(3). Although Ms. Chubb raises a number of questions concerning the opinion of the Court of Appeals on this matter—questions which will be dealt with subsequently—the plain language of the relevant statutes and rules provides the best guidance.

RAP 2.2(a) sets out the types of proceedings in which a litigant may appeal as a matter of right. Failure to mention a particular proceeding in RAP 2.2(a) indicates this court's intent that the matter be reviewable solely under the discretionary review guidelines of RAP 2.3. *Cf. In re Lewis,* 89 Wn.2d 113, 115, 569 P.2d 1158 (1977); *In re Watson,* 23 Wn. App. 21, 23, 594 P.2d 947 (1979). RAP 2.2(a) states, in relevant part:

Unless otherwise prohibited by statute or court rule . . . a party may appeal from only the following superior court decisions:

. . .
(5) *Juvenile Court Disposition.* The disposition decision following a finding of dependency by a juvenile court, or a disposition decision following a finding of guilt in a juvenile offense proceeding.

(6) *Deprivation of All Parental Rights.* A decision depriving a person of all parental rights with respect to a child.

The procedure for issuing an "order of disposition" in a dependency proceeding is found in RCW 13.34.130. That statute, at subsection (1), provides for two types of "dispositions" if the fact–finding hearings in RCW 13.34.110 result in a finding of dependency: either the child remains in the home under supervision or she is removed.

Former RCW 13.34.130(3) provides for a periodic review process of the juvenile court disposition. It states:

The status of all children found to be dependent shall be reviewed by the court at least every six months at a hearing in which it shall be determined whether court supervision should continue.

This statute authorizes the dependency review hearings that Ms. Chubb contends she has a right to appeal. A plain reading of RAP 2.2(a)(5), however, indicates that the decision that is to be appealable as a matter of right is the "disposition decision following a finding of dependency". The language of RCW 13.34.130(1) plainly indicates that it concerns the "disposition" that results from the finding of dependency at the original fact–finding hearing. RCW 13.34.130(1) uses the word "disposition" frequently. Former RCW 13.34.130(3), on the other hand, does not mention the word "disposition" at all. In light of the statute's function as a whole, it serves as a built–in review process for the original disposition. In essence, then, Ms. Chubb is arguing for an additional tier of review, on top of what already is provided by statute.

The statute covering termination orders, RCW 13.34.180, further indicates that RAP 2.2(a)(5) applies only to RCW 13.34.130(1). In RCW 13.34.180(2), one of the requirements for seeking a petition for termination is that "the court has

entered a dispositional order pursuant to RCW 13.34.130". The term "disposition" again is central to the process. Thus, the repeated reference to "disposition" puts focus on the statute which authorizes the dispositional order in the first place—RCW 13.34.130(1)—rather than the one which authorizes the review hearings of that order, former RCW 13.34.130(3).

Ms. Chubb contends that each dependency review hearing is a reestablishment of the original dependency disposition, therefore being a disposition in itself. In support of this contention, she points to precedent that a juvenile court must find dependency to have jurisdiction over the matter before it. *In re Frank,* 41 Wn.2d 294, 295, 248 P.2d 553 (1952); *In re Hudson,* 13 Wn.2d 673, 681, 126 P.2d 765 (1942); *In re Hendrickson,* 7 Wn. App. 485, 499 P.2d 908 (1972). She states that "unless a court dismisses the petition, it must find the child dependent to retain jurisdiction." Petition for Review, at 4. She argues further that this precedent conflicts with the analysis of the Court of Appeals that orders from a dependency review hearing under RCW 13.34.130 do not require a finding of dependency. *See Chubb II,* 52 Wn. App. 541.

The cases petitioner cites do not support her position. At issue in *Frank* and *Hudson* was the *initial* determination of dependency. Here, the dependency was already determined by the juvenile court through its disposition order and affirmed by the Court of Appeals in *Chubb* I. Thus, dependency was a condition previous to the review hearings under former RCW 13.34.130(3). The juvenile court, then, already had jurisdiction. The preexistence of jurisdiction before the review hearing is reflected in former RCW 13.34.130(3) with its aim to determine "whether court supervision *should continue.*" (Italics ours.) Supervision could not continue without jurisdiction in the first place. Thus, petitioner's argument here fails.[1]

---

[1] *In re Hendrickson, supra,* does not address the issue petitioner cites it for.

Petitioner's argument that the analysis of the Court of Appeals conflicts with existing precedent misconstrues that court's statement. The Court of Appeals held: "Dependency review orders entered pursuant to RCW 13.34.130(3) do not require that a finding of dependency be made at each review hearing and therefore they are not appealable under RAP 2.2(a)(5)." *Chubb* II, 52 Wn. App. at 543–44. This statement is consistent with our analysis. The juvenile court is not required to make the determination of dependency anew at each hearing. Its function is to determine whether court supervision should *continue*. Essentially, if this supervision is to continue, then what the juvenile court has decided is to abide by the status quo: the determination of dependency.

Ms. Chubb also takes issue with the finding of the Court of Appeals that dependency review orders are "interlocutory in character," and therefore not amenable to appeal by right. *Chubb* II, at 543. She argues that the short–term nature of the review orders do not necessarily qualify them as interlocutory and that dependency findings are not necessarily reviewed in the termination hearing, as a genuine interlocutory decision would be. In short, she implies that each review order carries a sense of finality because "lack of termination does not mean that there has been no deprivation of rights in the meantime." Petition for Review, at 6.

Contrary to Ms. Chubb's implication, dependency review orders are not final: former RCW 13.34.130(3) mandates that review hearings occur every 6 months after the original disposition. This review process continues until either the status quo changes and the court decides that its supervision should not continue or until a petition for termination is made. Because they take place in an ongoing process, the review hearings and the orders issued from them are interlocutory: they are not final, but await possible revision in the next hearing.

In light of our analysis based on the language of the statute, however, Ms. Chubb's "interlocutory" argument—as well as the reasoning of the Court of Appeals in this

regard—makes no difference. The language of RAP 2.2(a) and RCW 13.34.130 indicates that appeal by right applies only to the disposition decision following the finding of dependency or to a marked change in the status quo, which in effect amounts to a new disposition.

Ms. Chubb also argues that it is arbitrary and capricious and a denial of equal protection to allow appeal by right under RCW 13.34.130(1) but not former RCW 13.34.130(3). For this proposition, she cites *Lindsey v. Normet,* 405 U.S. 56, 31 L. Ed. 2d 36, 92 S. Ct. 862 (1972), stating that when the state grants a right to appeal, "it cannot grant it to some and arbitrarily and capriciously deny it to others." Petition for Review, at 7. She argues that, because a parent's care of her children is a fundamental right under *In re Myricks,* 85 Wn.2d 252, 533 P.2d 841 (1975), and *Santosky v. Kramer,* 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982), this court should apply strict scrutiny. She argues further that court rules are treated the same as statutes in such challenges, citing *Moose Lodge 107 v. Irvis,* 407 U.S. 163, 32 L. Ed. 2d 627, 92 S. Ct. 1965 (1972); *Shelley v. Kraemer,* 334 U.S. 1, 92 L. Ed. 1161, 68 S. Ct. 836, 3 A.L.R.2d 441 (1948). *See also Nielsen v. Washington State Bar Ass'n,* 90 Wn.2d 818, 585 P.2d 1191 (1978) (strict scrutiny test therein).

Ms. Chubb's argument is incorrect. Her case does not present the situation where the right to appeal is granted to some and not to others. Any person involved in a dependency review hearing under former RCW 13.34.130(3) by definition has already been affected by the initial disposition decision and has had the right to appeal that earlier decision. Therefore, the people in the two "classes" made out by Ms. Chubb are one and the same. RCW 13.34.130(1) and former RCW 13.34.130(3) merely represent different stages of the same process, not different types of proceedings affecting different classes of people. This case, then, presents no equal protection problem.

As a related matter, petitioner argues that the denial of a motion to vacate the dispositional decision made at the first

review hearing is appealable as of right under RAP 2.2(a)(10). Petitioner does not brief this point clearly, stating merely: "It seems to be a matter of first impression, but RAP 2.2 draws no distinction between kinds of orders that can be vacated." Reply Brief (Petition for Review), at 1. Petitioner cites no authority for this argument.

Lack of a clear legal argument with cited authority is grounds for dismissing an argument on appeal. *Griffin v. Department of Social & Health Servs.*, 91 Wn.2d 616, 590 P.2d 816 (1979); *State v. Kroll*, 87 Wn.2d 829, 558 P.2d 173 (1976). Nonetheless, we note that RAP 2.2(a)(10) makes no distinction between the types of judgments upon which the denial of a motion to vacate would merit appeal by right, nor does it distinguish between frivolous and nonfrivolous motions. However, because petitioner made the motion in conjunction with the dependency review hearing on Aug. 13, 1985, see Report of Proceedings (Aug. 13, 1985), at 3–11, the matter essentially was subsumed into the review hearing. The purpose of the review hearing is to determine whether the dependency disposition should remain or be discontinued. Thus, the aims of Ms. Chubb's motion and of the review hearing itself were identical. Moreover, if this court were to view the motion to vacate as a procedure separate from the review hearing, then it would be a simple matter to circumvent the lack of appeal by right from the review hearing merely by making the motion to vacate the disposition at that hearing. Therefore, even though petitioner did not brief this area adequately, we reject the argument.

## II

Ms. Chubb argues that the dependency and termination process violated several of her federal constitutional rights. She makes the following constitutional arguments:

1. RCW 13.34.030(2)(c) is vague and overbroad.

2. By taking paranoid delusions into account as a factor in determining continued dependency and termination, the State denied Ms. Chubb her right of free speech.

3. Mental illness cannot be the sole factor in denying "the Fundamental Liberty to the care and custody" of one's children.

4. The State denied Ms. Chubb her freedom of travel when the "definition" it used for "instability" took into account Ms. Chubb's frequent moves.

5. Ms. Chubb was denied procedural due process.

In affirming the decision of the Court of Appeals, we adopt its reasoning in all but one of these arguments—that of freedom of speech. *See Chubb* II, at 544–46.

Petitioner alleges that RCW 13.34.030(2)(c), with its focus on "psychological development" as a criterion for dependency, allows the State to remove the children from her home on the basis of her own speech. From this, she asks rhetorically if mentally ill persons are "excluded" from free speech protection.

The gist of Ms. Chubb's argument is that her schizophrenic delusions constitute protected speech. She maintains that, as a parent, she has an absolute right to express her beliefs and opinions to her children. She further argues that the State may not judge the content of this speech, just as it may not judge the content of any other. She cites a number of United States Supreme Court cases for the proposition that the State may not regulate "what parents must tell or teach their children": *Meyer v. Nebraska,* 262 U.S. 390, 67 L. Ed. 1042, 43 S. Ct. 625, 29 A.L.R. 1446 (1923) (overturning statute prohibiting the teaching of foreign languages); *Pierce v. Society of Sisters,* 268 U.S. 510, 69 L. Ed. 1070, 45 S. Ct. 571, 39 A.L.R. 468 (1925) (overturning statute prohibiting attendance at parochial schools); *West Va. Bd. of Educ. v. Barnette,* 319 U.S. 624, 87 L. Ed. 1628, 63 S. Ct. 1178, 147 A.L.R. 674 (1943) (overturning statute forcing school children to salute the flag); *Wisconsin v. Yoder,* 406 U.S. 205, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972) (overturning statute forcing Amish children to attend school). Petitioner argues that these cases, especially *Pierce* and *Meyer,* establish a "Fundamental Right . . . to inculcate their children with those beliefs and teachings the

parents chose." Brief of Appellant (Court of Appeals), at 15. She concludes by contending that freedom of choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment, citing *Santosky v. Kramer*, 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982). Because the State could not employ penal statutes to Ms. Chubb to curtail her speech, she argues that it may not achieve the same end indirectly by basing the dependency disposition order on her vocalizing her delusions to her children.

Petitioner further contends that the courts actually substitute the "best interests of the child" standard for the application of the constitution in child dependency cases. She argues that no definition for "best interests" exists, therefore it is unconstitutionally vague.

The State responds to these arguments by claiming that a court must rule in the child's favor whenever the rights of parents and the welfare of children conflict, citing *In re Sego*, 82 Wn.2d 736, 738, 513 P.2d 831 (1973). In addition, it claims that the State can regulate speech when it presents a "clear and present danger" to others. *Schenck v. United States*, 249 U.S. 47, 63 L. Ed. 470, 39 S. Ct. 247 (1919). The Court of Appeals relied on both of these cases, and the State's reasoning, in its opinion below.

Ms. Chubb's arguments here do not have merit, but for a reason different from that cited by the Court of Appeals. It is inappropriate to inject *Schenck's* "clear and present danger" test into the child welfare realm. *Schenck* and its progeny apply to statutes which aim to regulate speech through punitive measures. Petitioner argues that the State seeks to regulate her speech to her children through a "non–speech" statute. Although this case is not one of speech regulation, citation to *Schenck* would in effect acknowledge that it is. Further, the "clear and present danger" test is generally applicable to speech which may tend to incite lawless action or violence or present danger to the fairness of judicial proceedings. *See* L. Tribe, *American Constitutional Law* §§ 12–9, 12–10, 12–11 (2d ed.

1988). Such is not the case here. The restriction of speech imposed by the *Schenck* test is strong medicine and should only be used when absolutely necessary.

The State did not seek to remove the Chubb children from their mother because of her exercise of speech, it did so because Ms. Chubb was mentally ill. Such mental illness, of which vocalized delusions were a part, placed the children in "danger of substantial damage to . . . psychological . . . development". RCW 13.34.030(2)(c); *see also Chubb* I at 532–33. The petitioner herself concedes that "the Court found Mrs. Chubb's expressions only part of the reason for dependency . . ." Petition for Review, at 11.

More applicable to this situation is the rule that the State's compelling interest in a child's welfare often takes priority over the personal rights of the parent. *See In re Sego, supra; In re Pawling,* 101 Wn.2d 392, 399, 679 P.2d 916 (1984). What rights Ms. Chubb had to express her paranoid delusions to her children are surpassed by the State's interest in protecting the children from psychological damage through continued exposure to those delusions at a crucially developmental age. In the final analysis, Ms. Chubb is still free to express her delusions. The speech itself is not repressed; the State merely has protected the children from an unstable home with a severely mentally ill parent. RCW 13.34.030(2)(c) does not aim to restrict speech, it aims to protect children notwithstanding the activities of the parent.

## III

Finally, Ms. Chubb contends that the juvenile court's finding of continued dependency and termination was not based on sufficient evidence.

This court accepts the juvenile court's findings of fact as long as they are supported by substantial evidence. *In re Aschauer,* 93 Wn.2d 689, 611 P.2d 1245 (1980); *Sylvester v. Imhoff,* 81 Wn.2d 637, 503 P.2d 734 (1972); *In re Watson,* 25 Wn. App. 508, 512, 610 P.2d 367 (1979). As cases such as *Aschauer* and *In re Frederiksen,* 25 Wn. App.

726, 610 P.2d 371 (1979), *review denied*, 94 Wn.2d 1002 (1980), indicate, evidence of severe mental illness can support a finding of continued dependence or termination.

As the Court of Appeals noted below, the juvenile court's findings of fact, culled from an extensive record, support the outcome of termination. The Court of Appeals cited three findings in particular:

> The mother's condition is chronic schizoid paranoia. Because of the intensity and chronicity of her condition, there is little likelihood that she will ever recover.

Finding of fact 12.

> Even when taking medication Ms. Chubb is incapable of normal parent–child relationships or providing for the emotional needs of her children.

Finding of fact 13.

> At best, moving the children under Ms. Chubb's care would subject the children to profound trauma of a psychological and sociological nature. The physical move to a new location would also have a severe, negative impact on the children's development. It would be disruptive to their progress already made in treatment since placement in foster care.

Finding of fact 14.

After an examination of the record, we affirm the Court of Appeals.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, DORE, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.