62 P.3d 891 (2002)
115 Wash.App. 182
In re the DEPENDENCY OF T.J.B., D.O.B.: 2/17/99.
State of Washington Department of Social and Health Services, Respondent,
v.
Timothy Brown, Appellant.
No. 49944-1-I.
Court of Appeals of Washington, Division 1.
November 18, 2002.
Publication Ordered and Amended January 9, 2003.
Jason Saunders, Thomas Kummerow, Washington Appellate Project, Seattle, WA, for Appellant.
Jonathan Milstein, Assistant Attorney General, Noella Rawlings, Asst. Atty General, DSHS Division, Seattle, WA, for Respondent.

OPINION
PER CURIAM.
Timothy Brown challenges the sufficiency of the evidence to support the trial court's determination that his son, T.J., is a dependent child. Notwithstanding statements to the contrary in his notice of appeal, Brown *892 now represents to this court that he does not seek review of the dispositional order that followed the determination of dependency. We hold that the Order Finding Dependency Status is not subject to appeal, but is subject to discretionary review. We also hold that there is substantial evidence to support the challenged findings respecting dependency, and that the determination of dependency does not meet the criteria for discretionary review. Accordingly, we deny discretionary review.
T.J. was born on February 17, 1999, to Timothy Brown and his wife, Harlene Kerlee. Kerlee has a history of drug abuse and mental illness, and abandoned T.J. Thereafter, Brown became T.J.'s primary custodian. The marriage of Brown and Kerlee was dissolved in December 2000.
Later, Brown lived in the same house as Kerlee and her boyfriend. In July 2001, Kerlee and Brown were involved in a domestic violence incident. Kerlee claimed that Brown attempted to choke her, while Brown claimed that Kerlee had assaulted him by hitting him on the head with a coffee cup. Police arrested Kerlee and took her to the hospital. She stated to an emergency room worker that she had attempted suicide through use of prescription pills, alcohol, and cocaine.
The worker referred the matter to the Department of Social and Health Services, Division of Children and Family Services (the Department). A social worker, Kazuaki Sugiyama, investigated the incident and spoke with Brown. Brown informed Sugiyama that Kerlee had mental health issues and could be dangerous. After confirming that Brown was the primary custodian of T.J., Sugiyama determined that further Department intervention was not warranted, and closed his file.
About two weeks later, the police responded to another domestic violence incident involving Brown and Kerlee. Brown, who was cooking dinner for T.J., answered the door. The police searched the house and, after approximately 45 minutes, they found Kerlee hiding in a closet. While the officers initially arrested Kerlee, they later decided to arrest Brown instead. T.J. was removed from the home and placed with his paternal aunt, Tina Wiedmann.
Several days later, Sugiyama learned of the most recent domestic violence incident and T.J.'s removal from the home. He interviewed Wiedmann, who told him that she believed that Brown had a problem with alcohol, was violent when he was drunk, and smoked marijuana. Sugiyama also learned that the police had arrested Brown because Kerlee claimed that Brown had shoved her and T.J., and that the officers had found field narcotics testing kits in the home shared by Brown, Kerlee, and another. Based on this information, Sugiyama commenced a dependency proceeding on August 14, 2001.
The first shelter care hearing was on August 15, 2001.[1] The court ordered that T.J.'s placement with Wiedmann continue. Both Brown and Kerlee were ordered to undergo drug and alcohol assessments and to submit to two urinalysis tests per week. At the time of the hearing, Brown was still in custody for the latest domestic violence incident. Because he was not released until September 20, 2001, Brown was unable to participate in these ordered services.
The 30-day shelter care hearing was on September 24, 2001. The court again ordered that T.J. remain with Wiedmann, and that Brown was to obtain an alcohol and drug assessment and undergo urinalysis twice weekly.
On October 23, 2001, the court entered dependency and dispositional orders by default as to Kerlee. Brown received a continuance. The dependency hearing as to Brown began on January 9, 2002 and concluded on January 15, 2002. The court entered its findings, conclusions, and a dependency order on January 23, 2002. Contemporaneously, the court entered its disposition order. Timely appeal of both orders followed.

DISCRETIONARY REVIEW
Although Brown designated both the order of dependency and the dispositional *893 order in his notice of appeal, he now only assigns error to the former order. The State responds that only the dispositional order may be appealed as a matter of right, and that Brown's appeal should be treated as a motion for discretionary review. We agree.
In In re Chubb,[2] the Supreme Court held that while dispositional orders are appealable as a matter of right, an order of dependency is not. Brown argues that Chubb is distinguishable because that case dealt with a dependency review order rather than an initial finding of dependency. But the court in Chubb did not so limit its holding. Further, the fact that an order of dependency may not be challenged on direct appeal is borne out by the plain language of RAP 2.2(a), which spells out what orders may be appealed as a matter of right. "Failure to mention a particular proceeding in RAP 2.2(a) indicates this court's intent that the matter be reviewable solely under the discretionary review guidelines of RAP 2.3."[3]
Brown argues that he is entitled to directly appeal the order of dependency under RAP 2.2(a)(13). But RAP 2.2(a)(13) only allows for direct appeal of a final order made after judgment. No judgment was entered in this matter prior to the finding of dependency. Nor is an order of dependency a "final" order. RAP 2.2(a)(13) therefore does not apply.
RAP 2.2(a)(5) provides that the disposition decision following a finding of dependency may be appealed, but the clear language of the rule does not allow for direct appeal of a finding of dependency. Brown argues that such a reading of the rule is "absurd." We disagree. While a finding of dependency is a necessary precursor to a dispositional order being entered, it does not necessarily follow that a parent has a right to directly appeal the finding of dependency. If a parent were allowed to directly appeal a finding of dependency and then, if unsuccessful, could appeal from a later order of disposition, this would allow the parent "two bites at the apple" and would encourage multiple appeals and piecemeal review.
Because Brown is not entitled to appeal as a matter of right, we treat his notice of appeal as a motion for discretionary review.[4] RAP 2.3(b) provides that discretionary review will be accepted only:
(1) If the superior court has committed an obvious error which would render further proceedings useless;
(2) If the superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act; or
(3) If the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court.
He claims he qualifies under the latter two criteria, and does not argue the first. Based on these standards, we conclude that Brown has failed to meet the criteria for discretionary review, in that the trial court committed neither probable nor obvious error.

DEPENDENT CHILD
It is a longstanding tenet of Washington law that a parent "has the natural and legal right to the custody and control of the children, unless so completely unfit for such duties that the welfare of the children themselves imperatively demanded another disposition of their custody."[5] The Legislature recognized this right in RCW 13.34.020, in which it declared that "the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized."
This right, however, is to be balanced against the rights of the child. "When the rights of basic nurture, physical and mental health, and safety of the child and the legal *894 rights of the parents are in conflict, the rights and safety of the child should prevail."[6] To that end, the Legislature has established a procedure under which a "[d]ependent child" may be removed from the custody of the parent. There are three ways in which a child may be found to be dependent.[7] In this case, the trial court expressly found that T.B. was not abandoned and was not abused or neglected. These unchallenged findings are verities on appeal.[8]
Thus, the sole issue is whether T.B. is a dependent child in that he "[h]as no parent, guardian, or custodian capable of adequately caring for [him], such that [he] is in circumstances which constitute a danger of substantial damage to [his] psychological or physical development."[9]
Brown argues, and we agree, that RCW 13.34.030(5)(c) requires a finding of current unfitness as a prerequisite to a finding of dependency. "[A]n existing ability or capacity of parents adequately and properly to care for their children is inconsistent with a status of dependency."[10] That is not to say, however, that past behavior has no bearing on current fitness. Washington courts have long held that "past history is a factor that a court may consider in weighing a parent's current fitness."[11]
The trial court entered several findings of fact to which Brown assigns error. We review dependency findings with a substantial evidence standard.[12] Evidence is substantial if, a rational trier of fact could find the fact in question by a preponderance of the evidence when viewed in the light most favorable to the prevailing party.[13]
The court found that dependency was supported by the mother's erratic behavior, and that restrictions on contact between T.J. and his mother was appropriate.[14] This finding is supported by the record. Kerlee had a history of mental illness and drug abuse. And while there was a current no-contact order between Kerlee and Brown, Brown had lived with Kerlee within the past year. He only stopped living with her after his latest arrest for domestic violence, which in turn led to the Department filing the dependency action.
Brown also assigns error to Finding of Fact III(B)(4), wherein the court found that while Brown was a caring father, he has had inconsistent employment and income, and has had an unstable and transient lifestyle. This finding is amply supported by the record. Brown had been frequently unemployed, and had moved numerous times in the past year and a half. While Brown had a job at the time of the hearing, he was living with a friend rent free in a somewhat tenuous arrangement. Prior to that, Brown had lived in five different residences within a period of 15 months.
Brown assigns error to Finding of Fact III(B)(6), in which the court found that Brown exercised poor judgment by living in an environment in which alcohol and drugs may have been abused. This finding is well supported by the record. Brown lived with his ex-wife Kerlee, a drug addict, and her boyfriend. Police found drug paraphernalia in the household. Another of Brown's former roommates had been convicted of DUI. The court did not abuse its discretion in finding that alcohol or drugs may have been abused in these households, and that Brown therefore exercised poor judgment in choosing to live in these households.
Brown also assigns error to Finding of Fact III(B)(7), wherein the court found that in an instance of "potential physical endangerment," *895 T.J. was found wandering unsupervised by a busy roadside without Brown's knowledge. Brown did not deny that this incident occurred, and a child wandering unsupervised by the roadway clearly poses the potential for physical harm to the child.
The court found that Brown has a history of alcohol use/abuse, that there is a risk of reoccurrence without monitoring, and that T.J. would be at risk if abuse reoccurred.[15] That portion of the finding relating to a past history of alcohol use/abuse is supported by the testimony of the witnesses. Brown's sister Wiedmann testified at the hearing that Brown had a problem with alcohol. She claimed that when Brown lived with her from March to July 2001, he was nearly always drinking, and often appeared intoxicated. She further claimed that Brown smelled of alcohol on more than one occasion when he came to visit after the dependency petition was filed.
While Brown presented testimony from other witnesses who contradicted Wiedmann, the court was not required to accept these witnesses' testimony. And while Brown denied these allegations, his testimony was suspect. Brown claimed that he had stopped drinking in August of 2001, when he was last arrested. But Anita Fischer, a Child Protective Services social worker, testified that at the 8:30 a.m. September 24, 30-day hearing, Brown smelled like alcohol and had red and watery eyes. Between his September 20, 2001, release date and December 31, 2001, Brown missed approximately ¼ of his appointments for urinalysis. Fischer's testimony also supports a finding that there was a risk of reoccurrence, and that T.J. could be at risk if abuse did reoccur.
Finally, Brown assigns error to Finding of Fact III(B)(8).[16] In this finding, the court found that Brown had done a "commendable job raising his son as a single parent." The court noted, however, that "there may be alcohol issues." Rosemarie Defarias of Treatment Accountability for Safer Communities (TASC) performed Brown's alcohol and drug assessment. Defarias testified that she was unable to tell one way or another whether Brown had a current problem with alcohol because she only had his word that he had stopped drinking. The testimony of Wiedmann and Fischer supports a finding that Brown may well have had an alcohol problem.
The trial court's findings of facts were all supported by the record. Likewise, the trial court's findings support a finding of dependency. Brown argues that the record does not establish that he was suffering from present parental deficiencies at the time of the dependency hearing. But while Brown may have been making progress toward becoming a stable parent for T.J., his progress was relatively recent. He had just found a job, and his housing situation was still unstable. He had just been released from jail less than four months earlier. And while he claimed that he no longer consumed alcohol, a CPS social worker testified that he appeared to have been drinking on the morning of a court hearing. The trial court did not commit probable or obvious error in finding that Brown was still incapable of adequately caring for T.J., and in ordering dependency to monitor the situation while Brown attempted to continue with his progress.
Brown has failed to satisfy the standards set forth in RAP 2.3(b). We therefore deny discretionary review.
NOTES
[1] T.J. expressly declines to attack the dispositional order in any way. Rather, the focus of the appeal is limited to the dependency order. We do not address other appeal scenarios.
[2] 112 Wash.2d 719, 773 P.2d 851 (1989).
[3] Chubb, 112 Wash.2d at 721, 773 P.2d 851, citing In re Lewis, 89 Wash.2d 113, 115, 569 P.2d 1158 (1977); In re Watson, 23 Wash.App. 21, 23, 594 P.2d 947 (1979).
[4] RAP 5.1(c).
[5] In re Neff, 20 Wash. 652, 655, 56 P. 383 (1899).
[6] RCW 13.34.020.
[7] RCW 13.34.030(5).
[8] State v. Ross, 141 Wash.2d 304, 309, 4 P.3d 130 (2000).
[9] RCW 13.34.030(5)(c).
[10] In re Walker, 43 Wash.2d 710, 715, 263 P.2d 956 (1953).
[11] In re J.C., 130 Wash.2d 418, 428, 924 P.2d 21 (1996).
[12] In re Dependency of M.P., 76 Wash.App. 87, 90, 882 P.2d 1180 (1994).
[13] In re Dependency of M.P., 76 Wash.App. at 91, 882 P.2d 1180.
[14] Finding of Fact III(B)(9).
[15] Finding of Fact III(B)(5).
[16] Brown also assigns error to Finding of Fact III(B)(10), in which the court stated:

Even though the issues are close, the goal is the best interest of the child. This ruling is not a sanction, but rather an opportunity for the father to establish a safe and stable environment, polish parenting skills and demonstrate that there are no issues of alcohol abuse that could affect the child. It is the court's intent that the child be returned as soon as there are no risk factors as to alcohol and the father has established a stable home environment.
This is not so much a finding of fact as it is an explanation of the court's rationale.