FILED
COURT OF APPEALS
DIVISION II

2014 FEB 20 AM 9: 24

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ARTHUR WEST, | No. 43004-5-II |
| Appellant, | |
| v. | |
| PORT OF TACOMA, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, C.J. — Arthur West appeals an order involuntarily dismissing his public records lawsuit against the Port of Tacoma. West argues that the trial court erred by (1) dismissing his lawsuit under both CR 41 and the trial court's inherent power to dismiss cases; (2) failing to conduct a show cause hearing or determine whether the Port violated the Public Records Act, chapter 42.56 RCW (PRA); and (3) appointing a special master to review the Port's claimed exemptions from disclosure. We agree that the trial court erred by dismissing West's case. We decline to consider his other arguments because they do not raise appealable issues. We also deny both parties' requests for attorney fees on appeal. Accordingly, we vacate the order of dismissal and remand for further proceedings.

## FACTS

On December 4, 2007, Arthur West requested records from the Port of Tacoma. West requested documents including "[a]ll records and communications concerning the South Sound Logistics Center, from January 1, 2005 to present." Clerk's Papers (CP) at 14. The South Sound

Logistics Center was a proposed and subsequently abandoned joint venture of the Ports of Tacoma and Olympia, for which the Port of Tacoma purchased a 745-acre parcel of land.

The Port of Tacoma (hereinafter "the Port," unless otherwise specified) promptly gave West an expected date for the release of responsive records, but the Port repeatedly pushed back its expected release date. On January 14, 2008, West filed a pro se complaint alleging that the Port's actions violated the Public Records Act. The Port made its first batch of records available to West on January 28. West inspected this batch on January 29 and served the Port with his complaint on January 31.

The procedural history of West's case below is complicated and confusing. In 2008, West filed three motions for show cause orders. First, West's January 14 motion requested an order requiring the Port to appear and show cause "why the requested records should not be disclosed." CP at 5. The trial court granted this motion and ordered the Port to appear on February 12. The Port replied that it was responding in good faith; although it had not yet made all records available, it listed the steps it had taken and sought a reasonable time to claim exemptions and fulfill the request. After setting the show cause hearing over to March 28, the trial court reserved its ruling because the trial court could not yet determine whether the Port's claimed exemptions were justified.

Second, West's April 24 show cause motion sought to join the Port of Olympia as a defendant and order it "to appear to show cause why [it] should not be found in violation of the PRA, since many of the records recovered by the Port of Tacoma and now maintained in Pierce County are also Port of Olympia records which have been destroyed by the Port of Olympia." CP at 58. The trial court denied this motion on May 2.

Third, on May 15, West filed a "motion for reconsideration and for show cause," requesting, inter alia, (1) in camera review of the records responsive to West's request and (2) an order "finding [the Port] in noncompliance with the PRA for failing to disclose records or make exemptions in response to the original request prior to the filing of this suit, and due to [the Port's] continuing misrepresentations and manifest bad faith, [its] destruction of records, and the deliberate policy of concealment of records." CP at 71-72. The trial court denied West's motion to reconsider its earlier rulings.

By May 21—five months after West's original request—the Port had filed in the trial court copies of all responsive records, along with a log of its claimed exemptions. The 6,870 responsive records consisted of 19,923 pages contained in 51 volumes. The Port claimed that 175 records were entirely exempt from disclosure and another 97 records were partially exempt. West challenged all claimed exemptions.

On May 30, 2008, the trial court stated that, pursuant to CR 53.3, it would appoint a special master to review the responsive records and the claimed exemptions. West opposed the appointment, claiming that a special master would cause delays and, alternatively, that the court should appoint a public records expert and not an attorney with general experience in law.

On March 20, 2009, the trial court appointed the Honorable Terry Lukens, a retired superior court judge, as special master.[1] In a report filed July 24, 2009, the special master recommended that the trial court approve most of the Port's claimed exemptions. In response,

---

[1] The delay in the appointment was apparently caused by the trial judge falling ill for several months and the parties' dispute over the special master's appointment.

the Port filed a request to modify the special master's recommendation as to one rejected exemption. West opposed the Port's request.

In a September 16, 2009 letter, the special master stated that he considered his task complete and that the Port's request and West's opposition were for the trial court to consider. But for 16 months following submission of the special master's letter, West did not file any motions or other pleadings in the case.[2]

Instead, according to his own brief, West commenced "flailing around" by attempting to press his public records request in other fora. Br. of Appellant at 24. Specifically, West (1) asked the Pierce County prosecuting attorney to declare that the trial judge had forfeited his office by failing to issue a timely determination in this case; (2) filed a complaint in the superior court under a new cause number "for negligence, mandamus, quo warranto, and disclosure of public records," CP at 1235; and (3) filed an action in federal district court alleging numerous constitutional claims premised on his allegation that the Port and its counsel turned West's public records request into a "private criminal prosecution" against him, CP at 1243. Similarly, before the special master filed his report, West also (4) filed a bar grievance alleging that the Port's counsel was inadequately supervised by a partner in her law firm; and (5) wrote to state and federal prosecutors, including the United States attorney general, requesting a criminal investigation of a conspiracy to deprive West of his civil rights and right to inspect the Port's records.

---

[2] During 2010 the Port continued to file "various administrative items" including a notice of attorney change of address and a notice of counsel's unavailability. CP at 998.

On December 8, 2010, the trial court mailed West and the Port a letter notifying them of a "status conference" on January 7, 2011. CP at 603. The letter advised, "If no one appears . . . the Court will dismiss this matter on its own motion." CP at 603.

On January 7, 2011, the date of the status conference, the Port filed a motion to dismiss, which it framed as a "reply" to the trial court's letter. This motion argued that CR 41(b) required the trial court to dismiss West's claims for want of prosecution because West had not filed anything in the case docket for the previous 16 months.[3] In response, West claimed that the parties had been awaiting the trial court's ruling based on the special master's report. Despite the Port's failure to give West notice of its CR 41(b) motion to dismiss, the trial court stated it would "grant [the Port's] order"; however, the Port did not have a proposed order ready. Verbatim Report of Proceedings (VRP) (Jan. 7, 2011) at 5.

West immediately began a flurry of filings, several of which seemed to duplicate one another. On January 7, West filed a note for a hearing on presentation of a written order of dismissal; the trial court set this hearing over to January 25. The trial court's January 25 order of dismissal relied solely on CR 41(b)(1) and (2).

Also on January 7, West filed a handwritten notice of appeal seeking our Supreme Court's direct review of the order of dismissal "and [ ] orders." CP at 606 (omitting two illegible words, possibly "24 interlocutory"). Our Supreme Court considered this notice of appeal along with a second notice that West subsequently filed. Although a notice of appeal is premature if filed before entry of the written decision, West apparently overcame this barrier by filing the trial

_____

[3] The Port simultaneously filed an additional motion to dismiss, also captioned as a "reply," asserting that dismissal was warranted because the Port complied with the Public Records Act. The trial court did not consider the merits of this motion.

court's written order of dismissal after its entry. *See* Letter from Supreme Court Deputy Clerk Susan Carlson to the parties and Pierce County Superior Court Clerk Kevin Stock (Jan. 11, 2011), and Letter from Supreme Court Deputy Clerk Susan Carlson to the parties (Feb. 17, 2011), *West v. Port of Tacoma*, No. 85510-2 (Wash.).

On January 19, West filed in the superior court a "note for trial, declaration, and objection to CR 41 dismissal." CP at 610. Although West noted this objection to be heard on January 28, the trial court set it over to March 4.

On February 1, West filed a "motion to vacate improper dismissal issued without notice," citing CR 59. CP at 630. The Port and the trial court treated it as a motion to reconsider the order of dismissal. Although West noted this motion to be heard on February 25, the trial court set this hearing over to March 18.

When the trial court convened the March 4 hearing on West's objection to the CR 41 dismissal, West did not appear. The trial court then entered an order denying West's motion to reconsider.[4] The order denying reconsideration based dismissal of West's suit on CR 41, and, for the first time, also based dismissal on the ground that West's "refusal to obey [a court] order was willful or deliberate." CP at 660 (alteration in original). But the trial court did not specify

---

[4] The record does not explain why the trial court denied West's motion to reconsider on March 4 instead of on March 18, the date on which it was noted for a hearing. West later claimed that (1) he believed the March 4 hearing had been set over to March 18 and (2) the trial court "deliberately held an ex parte hearing." CP at 672. But the trial court informed both parties of the March 4 hearing by letter dated January 21. Further, on March 2, the Port's counsel filed a proposed order denying West's motion for reconsideration; the proposed order was prepared for the trial court's consideration at the March 4 hearing. Although the record does not include a declaration of service accompanying the proposed order, the Port's counsel represented that "Mr. West has been served with [it]." VRP (Mar. 4, 2011) at 2. It also appears from the record that no hearing occurred on March 18.

the order that West willfully or deliberately disobeyed. The trial court further characterized its conclusions of law as supporting a "ruling to dismiss for want of prosecution." CP at 661.

On March 18, West filed a second notice of appeal, again seeking direct review in our Supreme Court. The notice of appeal identified (1) the order of dismissal, (2) the order denying West's motion to reconsider, and (3) "all interlocutory orders." CP at 662. The Supreme Court's clerk later transferred the case to this court because both West and the Port agreed to it. Letter from Supreme Court Deputy Clerk Susan Carlson to the parties (Dec. 15, 2011), *West*, No. 85510-2.

## ANALYSIS

### I. ORDER OF DISMISSAL

West argues that the trial court erroneously dismissed his suit because (1) it failed to give proper notice under CR 41 (b)(1) or (2), and (2) the trial court's inherent power cannot support the order of dismissal. In an apparent concession, the Port's response does not contend that the trial court properly relied on CR 41(b)(1) or (2); instead, the Port claims that the order of dismissal was a proper exercise of the trial court's inherent power. We agree with West that the order of dismissal was not properly based on CR 41(b)(1), CR 41(b)(2), or the trial court's inherent power.

A trial court may dismiss a case pursuant to a court rule or by exercising its inherent power to dismiss cases. *See Snohomish County v. Thorp Meats*, 110 Wn.2d 163, 166-67, 750 P.2d 1251 (1988). But a trial court may exercise its inherent power to dismiss a case "only when no court rule or statute governs the circumstances presented." *Thorp Meats*, 110 Wn.2d at 167.

No. 43004-5-II

A.    *Dismissal under CR 41(b)(1) and (2)*

West argues that the order of dismissal for want of prosecution was improper under CR 41(b)(1) and CR 41(b)(2) because he did not receive sufficient notice. We agree.

Whether a trial court properly dismissed an action for want of prosecution is a question of law. *State ex rel. Heyes v. Superior Court*, 12 Wn.2d 430, 433, 121 P.2d 960 (1942). Likewise, the application of a court rule to a particular set of facts is a question of law reviewed de novo. *Wiley v. Rehak*, 143 Wn.2d 339, 343, 20 P.3d 404 (2001).

Each of CR 41(b)(1) and (2) provides an independent method of involuntary dismissal under distinct circumstances. *Wallace v. Evans*, 131 Wn.2d 572, 578, 934 P.2d 662 (1997). But under both provisions, involuntary dismissal is *mandatory* when the criteria for dismissal are met. *Thorp Meats*, 110 Wn.2d at 167; *Vaughn v. Chung*, 119 Wn.2d 273, 278, 830 P.2d 668 (1992).

1. *CR 41(b)(1)*

CR 41(b)(1) permits a trial court to dismiss a case on a *party's* motion when the plaintiff "neglects to note the action for trial or hearing within 1 year after any issue of law or fact has been joined," unless the moving party caused the delay. "Such motion to dismiss shall come on for hearing only after 10 days' notice to the adverse party." CR 41(b)(1).

Here, dismissal was clearly improper under CR 41(b)(1) because the Port did not give West 10 days' notice. Instead, the Port moved to dismiss the case on the same day that the motion was heard. Thus the order of dismissal was erroneous to the extent it was based on CR 41(b)(1).

8

No. 43004-5-II

2. *CR 41(b)(2)*

CR 41(b)(2) allows the trial court to dismiss dormant cases *on its own* motion. *Miller v. Patterson*, 45 Wn. App. 450, 455, 725 P.2d 1016 (1986). Dismissal under CR 41(b)(2) is appropriate when three elements are met: (1) the trial court's clerk mails the required notice to the parties, (2) there is no action of record in the case during the 12 months preceding the notice, and (3) within 30 days following the notice, there is no action of record and no showing of good cause for continuing the case. *Vaughn*, 119 Wn.2d at 278. In the required notice, "the clerk of the superior court shall notify the attorneys of record by mail that the court will dismiss the case for want of prosecution" unless action of record occurs or a showing of good cause is made within 30 days. CR 41(b)(2)(A).

As West asserts, the trial court's letter was a deficient notice for the purposes of CR 41(b)(2)(A). The letter required the parties to appear at a status conference and further advised that the trial court would dismiss the case on its own motion "[i]f no one appears." CP at 603. But unlike the required notice, the letter failed to inform the parties that the case would be dismissed after 30 days absent action of record or a showing of good cause.[5] CR 41(b)(2)(A). The letter did not meet the requirements of a notice under CR 41(b)(2)(A), and therefore CR 41(b)(2) also cannot support the order of dismissal.

---

[5] Because the notice's contents were insufficient, we do not address West's additional arguments that (1) the order of dismissal erroneously found that the trial court's letter provided *more than* 30 days notice to the parties of the status conference because *exactly* 30 days were provided and (2) West took action of record by appearing at the status conference and noting the matter for trial.

9

B.    *Trial Court's Inherent Power To Dismiss Cases*

The Port proposed an additional order which it presented on March 4, when the trial court considered West's motion for reconsideration. The trial court's March 4 order contained all the findings of fact and conclusions of law stated in the January 25 order of dismissal, which was based solely on CR 41(b). In addition, the March 4 order contained one new finding of fact and seven new conclusions of law supporting dismissal as an exercise of the trial court's inherent power.[6]

The parties dispute whether the March 4 order *denying* West's motion for reconsideration could modify the rationale for dismissal by, for the first time, basing dismissal on the trial court's

---

[6] The new finding of fact stated: "Petitioner West's failure to timely prosecute this PRA case was without justification or excuse." CP at 659. The new conclusions of law stated:

> 6. Dismissal is also an appropriate remedy where the record indicates that "(1) the party's refusal to obey [a court] order was willful or deliberate, (2) the party's actions substantially prejudiced the opponent [. . .] and (3) the trial court explicitly considered whether a lesser sanction would probably have sufficed." *See Rivers* [*v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 686, 41 P.3d 1175 (2002)].
> 7. A party's disregard of a court order without reasonable excuse or justification is deemed willful.
> 8. Petitioner West's failure to timely prosecute this PRA case was without justification or excuse, and was therefore willful.
> 9. This is a Public Records Act case, in which potentially, a "per day" penalty is at issue.
> 10. Imposition of a "per day" penalty is mandatory.
> 11. Each day of the Petitioner's delay adds to the risk of the Port incurring a per day penalty, which under existing law, the Port could not be excused from *even on the basis that Plaintiff caused the delay*.
> 12. The Court's ruling to dismiss for want of prosecution recognizes and cures this prejudice, which no lesser sanction could do.

CP at 660-61.

inherent power. We assume without deciding that the trial court properly changed its rationale.[7] Even so, the trial court erred by exercising its inherent power to dismiss.

We review a trial court's order exercising its inherent power to dismiss a case for an abuse of discretion. *Stickney v. Port of Olympia*, 35 Wn.2d 239, 241, 212 P.2d 821 (1949). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). This standard is also violated when a trial court bases its decision on an erroneous view of the law.[8] *Mayer*, 156 Wn.2d at 684.

The trial court gave two reasons for exercising its inherent power to dismiss: (1) West's willful or deliberate refusal to obey a court order and (2) want of prosecution. Neither reason supports the dismissal of West's suit.

First, the trial court ruled that West's refusal to obey a court order was willful. But the trial court failed to identify any order that West violated. The trial court did not order West to prosecute his case, and our review of the record found no violation of any order. Therefore, to

---

[7] Neither party cites authority addressing this precise issue.

[8] Citing *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992), the Port argues that we should not consider whether the trial court abused its discretion because West originally sought de novo review and addressed the abuse of discretion standard for the first time in his reply brief. We disagree. Although RAP 10.3(a)(6) provides in part, "The court ordinarily encourages a concise statement of the standard of review as to each issue," the Port cites no case in which a party waived an argument by failing to address the correct standard of review in its original brief. *See* Br. of Resp't at 36-37. Because West's original brief argues that the trial court erred by dismissing his claim to the extent it relied on its inherent power, West did not raise this issue for the first time in reply.

the extent the dismissal rests on West's refusal to obey a court order, the trial court abused its discretion by dismissing West's suit for an untenable reason.

Second, the trial court exercised its inherent authority to dismiss the case for want of prosecution. But CR 41(b)(1) limits a trial court's inherent power to dismiss actions for want of prosecution. *Wallace*, 131 Wn.2d at 575, 577. A trial court may dismiss for want of prosecution on the basis of its inherent power *only* where CR 41(b)(1) does not address the circumstances, i.e., where the plaintiff has engaged in "'unacceptable litigation practices other than mere inaction.'" *Bus. Servs. of Am. II, Inc. v. WaferTech LLC*, 174 Wn.2d 304, 308, 274 P.3d 1025 (2012) (quoting *Wallace*, 131 Wn.2d at 577). Examples of such unacceptable practices include "failures to appear, filing late briefs, and similarly egregious sorts of dilatory behavior." *Bus. Servs.*, 174 Wn.2d at 311.

Here, the trial court found that West engaged in only one dilatory behavior: inaction. But mere inaction is insufficient to support dismissal of an action on the basis of the trial court's inherent power. *Bus. Servs.*, 174 Wn.2d at 308, 311; *Wallace*, 131 Wn.2d at 577. By basing the order of dismissal on untenable reasons, the trial court abused its discretion. *See Mayer*, 156 Wn.2d at 684.

Arguing to the contrary, the Port claims that the record would support dismissal as an exercise of inherent power on the grounds that West was dilatory in two other respects: (1) West failed to appear at the March 4, 2011 hearing on his motion to reconsider the order of dismissal and (2) West demonstrated "[i]nexcusable and unprofessional dilatoriness" through a host of filings in this case and related matters he filed in other fora. Br. of Resp't at 33. This claim fails

because the trial court did not base the order of dismissal on these actions.[9] Because the trial court abused its discretion by dismissing West's case, we vacate both the order of dismissal and the order denying West's motion for reconsideration. We remand for further proceedings consistent with this opinion.

## II. SHOW CAUSE HEARINGS AND DETERMINATION OF PRA VIOLATIONS

West next argues that "the Trial Court refused to consider whether the Port had violated the [Public Records Act], even though the Port's violations were apparent at the times that Mr. West noted up the show cause hearings." Br. of Appellant at 38-39. By making this argument, West is attempting to advance his argument on the merits of his claim. Although neither party questions the propriety of this argument, we do not consider it because it challenges decisions that are neither (1) appealable as a matter of right nor (2) within the scope of West's appeal from the order of dismissal.

The only two methods for seeking review of a superior court's decision are appeal as a matter of right and discretionary review. RAP 2.1(a). RAP 2.2(a) lists the types of decisions that are appealable as a matter of right. *In re Dependency of Chubb*, 112 Wn.2d 719, 721, 773 P.2d 851 (1989). But a decision on a party's motion seeking a show cause hearing to determine the merits of the party's claim is not appealable as a matter of right under RAP 2.2(a).[10] *Meadow Park Garden Assocs. v. Canley*, 54 Wn. App. 371, 372, 773 P.2d 875 (1989).

---

[9] The trial court never exercised its discretion by determining whether West's other actions were dilatory and, if so, whether they were so egregious that dismissal of the action was warranted as a sanction.

[10] When a decision is not appealable, it is reviewable solely according to the method for seeking discretionary review. *Chubb*, 112 Wn.2d at 721; *see* RAP 2.3. But West did not seek discretionary review.

Here, West's second notice of appeal sought review of the order of dismissal and "all interlocutory orders," apparently including the decisions on West's show cause motions. CP at 662. But a notice of appeal is not a proper method of seeking review of these decisions because they are not appealable as a matter of right. *Chubb*, 112 Wn.2d at 721; *Meadow Park*, 54 Wn. App. at 372.

In addition, West's challenge to the trial court's decisions on his show cause motions is outside the scope of his appeal from the order of dismissal.[11] Under RAP 2.4(b), the scope of our review of trial court decisions not designated in the notice of appeal includes decisions that (1) prejudicially affected the order designated in the notice of appeal and (2) occurred before we accepted review. A decision prejudicially affected an order if the order would not have happened but for the earlier decision. *Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 380, 46 P.3d 789 (2002). Because the order of dismissal would have happened *regardless of* the trial court's decisions on West's show cause motions, the decisions on the show cause motions did not prejudicially affect the order of dismissal.

Thus the trial court's orders on West's show cause motions are *neither* appealable as a matter of right *nor* within the scope of West's appeal from the order of dismissal. *See* RAP 2.2, 2.4. Therefore, we decline to consider West's argument.

---

[11] The trial court's order of dismissal was appealable as a matter of right. RAP 2.2(a)(3); *Munden v. Hazelrigg*, 105 Wn.2d 39, 44, 711 P.2d 295 (1985).

### III. APPOINTMENT OF A SPECIAL MASTER

West further claims that the trial court erred by "appointing a special master to decide the ultimate issues in the case." Br. of Appellant at 47. We similarly decline to consider this claim because it also raises an issue that is not appealable.

Pursuant to CR 53.3, the trial court appointed the special master to review the records responsive to West's request and the Port's claimed exemptions from disclosure. CR 53.3 authorizes a trial court to appoint a special master "to adjudicate discovery disputes."

A pretrial discovery order is not appealable as a matter of right. *See* RAP 2.2(a). In addition, the trial court's order appointing a special master did not prejudicially affect the trial court's appealable order of dismissal for want of prosecution. *See* RAP 2.4; *Right-Price*, 146 Wn.2d at 380. Therefore we decline to consider West's claim that the trial court erred by appointing the special master.

### ATTORNEY FEES ON APPEAL

Each party requests an award of attorney fees on appeal. A party may recover attorney fees on appeal if applicable law authorizes the award. RAP 18.1(a).

Citing RCW 42.56.550(4), West requests attorney fees "on appeal . . . and upon remand to the Trial Court." Br. of Appellant at 48. We deny the request.

RCW 42.56.550(4) provides in part:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all

costs, including reasonable attorney fees, incurred in connection with such legal action.[12]

A person prevails in a public records suit upon showing that, as a matter of law, the agency failed to disclose records upon request. *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 103, 117 P.3d 1117 (2005). Because the trial court dismissed West's suit without determining whether the Port failed to disclose records, at this stage RCW 42.56.550(4) provides no basis to award West attorney fees on appeal or upon remand. We deny West's attorney fee request.

Citing RCW 4.84.185 and RAP 18.9, the Port contends that it is entitled to reasonable attorney fees for defending a frivolous appeal. We disagree. Under RCW 4.84.185, an action is frivolous if, considering the action in its entirety, it cannot be supported by any rational argument based in fact or law. *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 785, 275 P.3d 339, *review denied*, 175 Wn.2d 1008 (2012). Under RAP 18.9, an appeal is frivolous if it is so devoid of merit that there exists no reasonable possibility of reversal. *In re Marriage of Healy*, 35 Wn. App. 402, 406, 667 P.2d 114 (1983). Because this action clearly is *not* frivolous under either standard, the Port's request fails. We decline both parties' requests for attorney fees.

---

[12] In 2011, the legislature amended RCW 42.56.550(4) to eliminate a minimum penalty for each day that an agency denied a person the right to inspect or copy a public record. LAWS OF 2011, ch. 273, § 1. The amendment does not affect this analysis.

No. 43004-5-II

Because the trial court erred by dismissing West's case, we vacate the order of dismissal and the order denying reconsideration. We remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Hunt, J.

_____
Penoyar, J.

17